McCALEB, Justice.
 

 On March 15, 1955 plaintiff secured a judgment of divorce against defendant. This judgment also awarded defendant custody of the six minor children of the marriage, aged 15, 13, 11, 8, 7 and 5 and ordered plaintiff to pay $150 per month alimony for the maintenance and support of the family. Shortly after the judgment of divorce, plaintiff remarried. His second wife had been previously married and had two children by her first marriage. Another child has been born of this marriage so that, at the present time, plaintiff, who works for the Ethyl Corporation in Baton-Rouge, Louisiana and earns an average monthly salary of slightly less than $500, is-attempting to support his second wife and child and his two step-children and also is. required to pay the $150 per month alimony to his first wife and six children.
 

 More than two years after the decree of divorce was entered, specifically on July 10, 1957, plaintiff filed a rule to have the $150 monthly alimony reduced on the ground that the obligations he has incurred by reason of his remarriage are such that-his debts have accumulated to the point that the payments thereon exceed his income. He further averred that he must undergo an operation which will be costly and, therefore, the alimony should be reduced to $100 per month.
 

 On the showing made, the judge issued a rule nisi for the defendant to show cause on July 15, 1957 why the relief prayed for by plaintiff should not be granted. On that date, defendant filed a counter rule in which she alleged, in substance, that it was. impossible for her to properly care for the needs of her six children on a monthly stipend of $150, or $25 per child, and that the alimony should be increased to $250 monthly. These rules were tried on July 15, 1957 and, after hearing the testimony,, the judge made plaintiff’s rule absolute-which was tantamount to a rejection of defendant’s demand. Defendant prosecuted
 
 *301
 
 this appeal and complains of the ruling reducing the original alimony award.
 
 [1]
 

 The evidence in the case is not seriously disputed. It shows that, since his second marriage, plaintiff has purchased a house and a 1957 Ford Station Wagon (on which he gave in trade a 1955 Ford Sedan and an old truck). He also bought a lawnmower, a washing machine and four burial plots. As a result of these acquisitions and other expenditures, plaintiff became indebted for the following sums: Personal loan of $3,-000, which he is repaying at the rate of $124 per month; $1,000 for down payment on the house purchased by him and he is required to pay $51.19 monthly on the house mortgage notes; $373 for closing costs and a down payment on the purchase price of the Station Wagon; a $291.46 personal loan from Asco Loan Company on which he must pay $18.18 monthly; another loan from Consumers Credit Company for $644, repayable at $28 per month ; $286 from Western Auto, repayable at $14 per month; $82 from Rose Furniture Co., repayable at $12 per month; $90.03 from Am. Bur. of Collection, repayable at $5 per month; $147.98 loan from Capital Bank, repayable at $11.46 monthly and a loan of $390 from City National Bank, repayable at $11.50 monthly. In addition, plaintiff stated that he is required to make monthly payments of $20 for utilities; $2.32 for insurance on his” home; $6 life insurance; 75^ E.R.A. dues; $15 gas and car expense; $60 food for his second wife and children and $9 for his stepson’s tuition in a school for the deaf.
 

 It is seen from this evidence alone that plaintiff’s monthly expenses amount to $418.58 exclusive of the $150 per month alimony he is required to pay his first wife and six children. Thus, he is unable to meet his obligations as they mature.
 

 On the other hand, the testimony plainly reveals that defendant and her six children are living in poverty and can hardly eke out a bare existence on the $150 monthly alimony. Defendant works for $1 per hour, her average earnings being approximately $28 per week. Of the six children, ranging in age from 15 to 5 years, three are girls. They attend a Catholic boarding school. Although the nuns, who conduct the school, do not exact payment of the children’s tuition, they require that defendant pay for their books, clothes and other supplies. Defendant’s eldest son, Roderick, is totally blind in one eye but she cannot afford to provide him with regular medical attention. She and the children live in a three-room house which has no bathroom or hot and cold running water; they do not have beds for every
 
 *303
 
 one and one child sleeps on the floor. Defendant does not own this house or have any equity in it.
 

 Defendant’s brother, one Gilbert LeBlanc, testified that he helps by occasionally feeding the children and has given her small amounts of money when he can afford it.
 

 Counsel for plaintiff takes no issue respecting the dire necessitous circumstances of defendant and her children or the obvious fact that she is unable to provide properly for them on the original monthly stipend. But, pointing to plaintiff’s testimony that he cannot pay $150 per month in view of his other obligations, counsel proclaims that the judge was correct in reducing the award to $100 per month, as our law does not penalize plaintiff for his financial misfortunes or for contracting a second marriage under which he has assumed additional responsibilities.
 

 We believe that this contention stems from a misconception of the provisions of Article 232 of the Civil Code which, as applied to this case, declares, that, when a person who gives alimony “ * * * is replaced
 
 [2]
 
 (placed) in such a situation that the one can no longer give, * * * reduction of the alimony may be sued for and granted.” 'This simply means that, if the person who is required to provide alimony becomes unable to do so, by reason of fortuitous events or other circumstances beyond his control, such as the loss of his position or illness, relief will be granted as it would be highly unjust to exact from the obligor a strict compliance with his duty under those conditions. But it would be contrary to the letter and spirit of the law to conclude that one required to pay alimony should be relieved therefrom, either wholly or partially, when he has brought about his own unstable financial condition by voluntarily incurring subsequent obligations, secondary to the alimony obligation, which render him unable to meet that obligation. Note the language of the codal article. It states he “is replaced (sic) in such a situation that the one can no longer give * * * ”, connoting an involuntary condition.
 

 It is to be borne in mind that it is the primary obligation of plaintiff to sup
 
 *305
 
 port, maintain and educate his children (Article 227, Civil Code)
 
 [3]
 
 and he was required by order of the court to meet that obligation by paying alimony to his first wife, who was awarded the custody of those children. Following the divorce, plaintiff had the right to make a new life for himself by remarrying and raising another family and he is not to be penalized for exercising this unquestioned privilege. But he cannot be allowed to employ the costs and indebtedness he has incurred by reason of his second marriage as a basis for relief from the obligation he owes to the children of the first marriage. Indeed, any voluntary act by a parent which renders it difficult or impossible to perform the primary obligation of support and maintenance of his children cannot be countenanced as a ground for release, either wholly or partially, from the obligation.
 

 We have been informed by plaintiff’s attorney, who is general counsel for the Legal Aid Society of Baton Rouge, that his economic circumstances have drastically changed since the trial of this case; that he has been on strike for nine months and that he has but recently obtained a job as a garbage collector at a reduction in income. Accordingly, it is asked that this case be remanded to hear evidence touching upon plaintiff’s alleged present inability to pay any alimony at all.
 

 This request cannot be granted for the reason, among others, that we are unable to accept counsel’s unsworn statement as a fact. If plaintiff’s financial circumstances have changed due to conditions beyond his control, he has the right, under Article 232 of the Civil Code, to file another rule for a temporary reduction of alimony.
 

 The judgment appealed from is reversed and it is now ordered that the rule taken by plaintiff for a reduction in alimony be discharged at his costs.
 

 [1]
 

 . Since defendant’s counsel in Ms brief.to tMs Court has merely asked for the restoration of the $150 per month alimony award, we presume that the rule for an increase of alimony has been abandoned.
 

 [2]
 

 . The word “replaced” is a literal translation of “replace”, as contained in Article 209 of the Code Napoleon 1804 from which our Civil Code Article 232 was copied. In Cassard’s English translation of the edition of the French Civil Code (1930), the word “replacé” in Article 209 is translated by the author as “placed again”. While the French jurists evidently found no lingual difficulty in fitting “replace” in situations obtaining under their law, the word “replaced” as used in Article 232 of our Code must be considered synonymous with “placed” and referring, in respect of the obligor’s duty to furnish alimony, to a change of position of either the obligor or the recipient as the supporting basis for discontinuing the alimony or reducing it.
 

 [3]
 

 . The Court said in Walder v. Walder, 159 La. 231, 105 So. 300, 302, “ * * * The duty .of the father to support his minor children is a continuing obligation. He cannot escape it.” See also Wilson v. Wilson, 205 La. 196. 17 So.2d 249 and Fazzio v. Krieger, 226 La. 511, 76 So.2d 713.