422 So.2d 548 (1982)
Mary Diana MARTIN, Plaintiff-Appellee,
v.
Ernest Louis BRASSEAUX, Defendant-Appellant.
No. 8732.
Court of Appeal of Louisiana, Third Circuit.
November 12, 1982.
*549 Gauthier & Cedars, Stanford B. Gauthier, II, Breaux Bridge, for defendant-appellant.
Mary Diana Martin, in pro per.
Before FORET, CUTRER and STOKER, JJ.
FORET, Judge.
Mary Diana Martin (plaintiff) brought a rule to show cause why she should not be granted the permanent care, custody and control of her minor child, Paula James Brasseaux (Paula), born during her marriage to defendant, Ernest Louis Brasseaux, and why defendant should not be ordered to pay her child support for Paula.[1]
*550 The trial court, after hearing plaintiff's rule, rendered judgment ordering defendant to pay plaintiff $8,100 for child support representing an award of $100 per month for 81 months commencing July 12, 1974, and ending April 12, 1981. The trial court further ordered defendant to pay plaintiff $116 per month for child support commencing April 12, 1981.
Defendant appeals and raises the following issues:
(1) Whether the trial court erred in awarding plaintiff child support for the time period commencing July 12, 1974 and ending April 12, 1981, and if not,
(2) Whether the trial court erred in making that award effective beginning on July 12, 1974.
Defendant takes no appeal from that portion of the trial court's judgment ordering him to pay plaintiff $116 per month for child support, nor has plaintiff appealed or answered the appeal. Thus, that portion of the trial court's judgment is final. Because of our decision herein, we will pretermit any discussion of the second issue raised by defendant.

FACTS
Plaintiff and defendant were married in St. Martin Parish on January 15, 1966, and Paula, who is presently 14 years old, was the only child born of this marriage. Plaintiff filed a "PETITION FOR SEPARATION" on July 12, 1974, alleging that she was entitled to a judicial separation as she and defendant had voluntarily lived separate and apart for more than a year. Plaintiff further alleged that she was entitled to the permanent custody of Paula, and that defendant should be ordered to pay her alimony and child support. However, in her petition, plaintiff recognized that defendant was unable to pay alimony or child support as he was disabled (see Footnote # 1). But, she expressly reserved her rights to collect these items whenever defendant became financially able to pay them. A curator ad hoc was appointed to represent defendant. However, the record shows that this action was never tried nor was any judgment on the merits rendered therein.
Plaintiff filed a "PETITION FOR DIVORCE" on October 24, 1977, alleging that she was entitled to a judgment decreeing an absolute divorce between herself and defendant as they had voluntarily lived separate and apart for more than two years. Plaintiff again sought the permanent custody of Paula and an award for child support. She alleged that, in accordance with an order issued by the trial court, approximately $215,000 belonging to defendant had been deposited in the registry of the court. Defendant had obtained these funds as a result of a settlement of his claims arising out of the accident that had disabled him. It was from these funds that plaintiff sought a lump sum award of $39,600 in satisfaction of defendant's child support obligation. Plaintiff's action for a divorce was uncontested, and was submitted to the trial court on January 16, 1978. A formal judgment decreeing an absolute divorce between the parties was signed by the trial court on January 8, 1979. However, that judgment states that:
"The question of permanent care, custody and control of the minor child, Paula James Brasseaux, and the amount of child support to be paid by defendant to petitioner is relegated to further proceedings."
Plaintiff filed a rule to show cause on July 28, 1978, after the date on which her *551 divorce action was submitted, but prior to the date on which judgment was rendered and signed therein. In her rule, plaintiff alleged that the parties had reached an agreement as to the amount of child support defendant would pay, and she sought judicial enforcement of that agreement. The "MINUTES OF COURT" show that a partial hearing was held on plaintiff's rule on October 13, 1978, and submitted. On joint motion of counsel, the matter was continued without date.
Finally, plaintiff filed a rule to show cause, which resulted in the judgment with which we are concerned, on July 20, 1979, once again alleging that she was entitled to the permanent custody of Paula. Further, plaintiff again alleged that the parties had entered into an agreement setting forth the amount of child support that defendant would pay, but that defendant refused to comply with the terms of that agreement. However, in the event that the trial court found that the alleged agreement was not legally binding on the parties, plaintiff alleged that defendant owed her $20,700 for child support from November of 1973, to the present, and that defendant should be ordered to pay her $400 per month for child support in the future.
The "MINUTES OF COURT" show that a hearing was held on plaintiff's second rule on September 7, 1979. At that hearing, a stipulation was entered into by the parties awarding plaintiff permanent custody of Paula, subject to certain visitation rights granted defendant. The trial court ordered judgment in accordance with the stipulation. On joint motion of counsel, it was further ordered that the hearing on the issue of child support be continued without date. The record shows that no formal judgment to this effect was submitted to the trial court for signing.[2]
A hearing on the issue of child support was finally held on March 25, 1981, when the trial court rendered judgment as noted at the beginning of this opinion.

TRIAL COURT'S AWARD TO PLAINTIFF OF $8,100 FOR CHILD SUPPORT
Defendant contends that the trial court erred in awarding plaintiff $8,100 for past child support. Defendant's contention is based on a number of arguments, one of which is that plaintiff failed to prove that Paula's needs in the past were insufficiently met by the social security benefits she was receiving as a result of his disability. (The evidence shows that Paula was determined to be eligible for such benefits beginning April 1, 1974.) There was testimony to the effect that these benefits amounted to less than $100 per month when Paula began receiving them. However, the benefits were increased: to $142.10 per month in June of 1975; to $152.00 per month in June of 1976; to $161.70 per month in June of 1977; to $173.00 per month in June of 1978; to $246.50 per month in March of 1979; to $270.90 per month in June of 1979; and, to $309.60 per month in June of 1980. Paula was still receiving social security benefits of $309.60 per month when the hearing on the issue of child support was held.
LSA-C.C. Article 227 provides:
"Art. 227. Parental support and education of children
Art. 227. Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children."
LSA-C.C. Article 231 provides:
"Art. 231. Basis for granting alimony
Art. 231. Alimony shall be granted in proportion to the wants of the person requiring it, and the circumstances of those who are to pay it."
LSA-C.C. Article 227 imposes on parents a mutual obligation of support, maintenance, and education of their children. The degree of support is determined by the needs of the child, as well as the *552 circumstances of those who are obligated to pay it. Guinn v. Guinn, 405 So.2d 620 (La. App. 3 Cir.1981); Prudhomme v. Prudhomme, 381 So.2d 906 (La.App. 3 Cir.1980), writ denied, 383 So.2d 782 (La.1980); Marcus v. Burnett, 282 So.2d 122 (La.1973).
A parent seeking an award for child support from his (her) former spouse has the burden of proving, by a preponderance of the evidence, the actual needs of the child (children) for whom such support is sought, and that the former spouse has the ability to pay the amount sought. Naquin v. Naquin, 405 So.2d 1171 (La.App. 1 Cir. 1981); Scacciaferro v. Hymel, 206 La. 973, 20 So.2d 284 (1944); Poydras v. Poydras, 155 So.2d 221 (La.App. 1 Cir.1963); Moreau v. Moreau, 142 So.2d 423 (La.App. 3 Cir. 1962).
Plaintiff introduced in evidence an affidavit setting forth various expenditures, alleged to be necessary for Paula's support, totaling $631.00 per month. However, plaintiff testified that Paula had not lived with her for the preceding four years. Instead, she preferred to live with her maternal grandparents. Further, plaintiff stated that the expenses listed in her affidavit are what she and her mother "thought" would be necessary for Paula's support, and did not reflect what was actually being expended for that purpose. Plaintiff was unable to estimate how much she and her mother had spent in supporting Paula from 1973 to the present. Plaintiff admitted that she had contributed nothing toward Paula's support since 1979.
Yola P. Martin, Paula's maternal grandmother, testified that Paula had been living with her for at least eight years. Yola stated that Paula's social security benefits had been the sole source of funds for her support, and that these benefits were inadequate for this purpose. However, she was unable to estimate the amount of the alleged deficiency. At one point in her testimony, Yola stated that it cost an average of $150 per month to support Paula.
Paula testified that she had lived with her maternal grandparents: "Ever since I can remember". She was asked if there was anything she didn't presently have because of defendant's failure to provide her with funds over and above those she was receiving from social security. She replied that she was unable to attend a modeling school for teenagers, but admitted that she had not asked defendant for the money to do so. She also stated that she had been unable to purchase clothing (she failed to indicate whether she was referring to clothing that was necessary, or that she simply desired to have), but admitted that defendant had bought clothes for her on several occasions. Paula could think of nothing else that she had been deprived of as a result of defendant's alleged failure to adequately support her.
We think it important to note here that there were six individuals, including Paula, living in her maternal grandparents' home. Two of these individuals were adult children of the grandparents, while one of the others was a minor child of theirs. Paula's maternal grandmother would pay the household expenses out of her checking account. She testified that she would place all of Paula's social security benefits in this account. The contributions of the other members of the household toward household expenses were shown by the evidence to be: over $400.00 per month from Paula's maternal grandfather; $151.00 per month from her maternal grandmother; approximately $130.00 per month from Thomas (an adult son of the grandparents); $100.00 per month from Druscilla (an adult daughter of the grandparents); and $61.10 per month from Mary Ann (a minor daughter of the grandparents). Thus, it can be seen that, while there were six people living in the household, Paula's social security benefits were being used to pay in excess of onesixth of the household expenses.
There was testimony indicating that Paula is currently receiving psychiatric counseling at the Acadiana Mental Health Clinic in Lafayette. However, there is no charge for these services. There was also evidence suggesting that Paula suffers from asthma, allergies, and dental problems, and that she has been unable to obtain adequate medical *553 and dental care because of a lack of funds. This is practically the only evidence adduced by plaintiff to show that Paula's social security benefits were inadequate to cover her actual needs in the past. However, as noted above, Paula's social security benefits were not used exclusively for her care.
The trial court recognized that this case was unusual because of the extensive lapse of time between the date of plaintiff's judicial demand for child support (which it determined to be July 12, 1974, the date on which plaintiff filed her "PETITION FOR SEPARATION"), and March 25, 1981, that date on which the hearing on plaintiff's last rule was held. The trial court also recognized that very little evidence had been presented by plaintiff to show what Paula's needs had been in the past. The trial court stated in its oral reasons for judgment that:
"Now, it is true that there's a social security benefit paid to Paula in Mr. Brasseaux's behalf of three hundred and nine dollars and sixty cents ($309.60) a month at this time. That was not always the case, as was offered into evidence. At the beginning, it was a much more modest sum, and with increases for cost of livingincreases, naturally, social security ups that every summer. That's been the experience in this case. For whatever it's worth, I consider that the social security benefit paid to Paula is a payment made by Mr. Brasseaux for support. It's attributable to his social security taxes. It's something that his dependents are entitled to as a result of what he earned. I consider it, then, a payment made on his behalf, you can say, by him. The question isis that sufficient? I consider that it's not. It's awful difficult, considering the circumstances of this case and the evidence presented to determine what would have been a proper amount over the years. Mr. Gauthier makes a good point when he says that there is no hard and fast evidence adduced here today as to what monthmonth bywhat month-by-month over the years would have been sufficient. The testimony has been, however, that the benefits paid by social security have not been sufficient, that that is not enough and it had to be supplemented by other money. Or, if that couldn't be done, then Paula had to do without. I think personally that this is the problem and this is a problem that an appelate [sic] court may not agree with my resolution of. But, to me, I can take judicial notice[*]almost of what it costs today to support a child, maybe not when you addwhen you superimpose on that requirement the rules we have about the same standard of living as the child was accustomed to and all of that. But, it's hard to go through life today and work and earn a living and pay bills without knowing what it costs to keep a human being alive and clothed and with a roof over their head, and other expenses that are attendant today in this area of our state and I've looked at the social security benefits that were paid over the years up `til now. I feel that justice would be served if I added another hundred dollars a month during that period of time. I compute that from July the 12th of 1974 to April 12th of 1981 to be eighty-one hundred dollars ($8100). Now, that's what I feel that Paula's needs would have been, and I feel that Mr. Brasseaux can pay it." (Emphasis ours.)
The amount which a parent is ordered to pay in fulfillment of his obligation to support his child must be determined in light of the totality of the circumstances. Dugas v. Dugas, 374 So.2d 1278 (La.App. 3 Cir.1979); Cowen v. Cowen, 375 So.2d 118 (La.App. 3 Cir.1979); Marcus v. Burnett, supra. However, it must be borne in mind that the parents' primary obligation is to support, maintain, and educate his child. LSA-C.C. Article 227; Dugas v. Dugas, supra; Laiche v. Laiche, 237 La. 298, 111 So.2d 120 (1959).
*554 We find that the record clearly shows that plaintiff failed to prove, by a preponderance of the evidence, that Paula's needs exceeded the amount of social security benefits she received. Both plaintiff and Paula's grandmother were unable to give even an estimate as to her needs in the past. Paula herself testified that virtually all of her needs were taken care of. Our learned Brother of the trial court's finding, that Paula's social security benefits were insufficient to cover her needs, is clearly wrong.
There is another basis for finding error in the lower court's award of $8,100 to plaintiff for child support. It is obvious from a reading of the trial court's oral reasons for judgment that it erroneously placed the entire burden of furnishing Paula support, maintenance and education on defendant, while requiring plaintiff to contribute nothing for these items. The evidence shows that, in fact, plaintiff has contributed little towards Paula's support in the past. She did admit that there was room for Paula to live in her present home.
A mutual obligation of support, maintenance and education of children is imposed by our law on both parents. The degree of support required of each is determined by the needs of the children and the circumstances of those who are obliged to pay it. (Emphasis ours.) LSA-C.C. Articles 227, 230 and 231; Prudhomme v. Prudhomme, supra; Graval v. Graval, 355 So.2d 1057 (La.App. 4 Cir.1978); Marcus v. Burnett, supra; Strickland v. Strickland, 377 So.2d 537 (La.App. 3 Cir.1979).
Further, in instances where one or both of the parties have remarried, the earnings of their respective spouses is to be considered in making an award for child support. Prudhomme v. Prudhomme, supra; Marcus v. Burnett, supra; Fazzio v. Krieger, 76 So.2d 713 (La.1954). The evidence shows that plaintiff remarried in 1979. However, the trial court erroneously refused to consider the earnings of plaintiff's second husband in making its award for child support stating that:
"I don't see how it can be said that he has to use his income to support her child."

DECREE
For the above and foregoing reasons, that portion of the trial court's judgment ordering defendant to pay plaintiff the sum of $8,100 for child support for the time period commencing July 12, 1974, and ending April 12, 1981, is reversed. In all other respects, the judgment of the trial court is affirmed.
All costs of this appeal, and in the trial court, are assessed in the proportions of one-half against plaintiff-appellee and onehalf against defendant-appellant.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Defendant suffered severe brain damage in an oilfield accident on October 3, 1973. Defendant's brother, Curley Brasseaux, filed a "PETITION FOR INTERDICTION" on January 14, 1977, instituting the action of In Re Interdiction of Ernest Louis Brasseaux, Docket # 29577, 16th Judicial District Court, Parish of St. Martin, State of Louisiana. The trial court rendered judgment in this action on March 14, 1977, "... decreeing Ernest Louis Brasseaux to be incapable of taking care of his person and of administering his affairs, and pronouncing his interdiction ...". The trial court further rendered judgment confirming Curley Brasseaux as defendant's Curator, and Witness Brasseaux as Under-Curator.

Defendant filed a "PETITION TO REVOKE INTERDICTION AND APPOINT PROVISIONAL CURATOR" on August 18, 1980. The trial court, after holding a contradictory hearing with the Provisional Curator, rendered judgment on October 15, 1980, revoking the interdiction of defendant. Curley Brasseaux had been named as a defendant to plaintiff's rule as Ernest Louis Brasseaux was interdicted at the time the rule was filed. However, at the time of the hearing on the rule on March 25, 1981, Ernest Louis Brasseaux was the only remaining defendant as the judgment pronouncing his interdiction had been revoked.
[2] A review of the record discloses that no formal judgment awarding custody of Paula to either of the parties has been signed by the trial court. However, as noted, the parties did stipulate that plaintiff would have custody of the child. Further, in his answer to the "PETITION FOR DIVORCE", defendant admitted that plaintiff was entitled to said custody.
[*] There is no authority whatsoever to support the proposition that a trial court may take judicial notice of the costs of supporting a child. As noted above, plaintiff, in an action for child support, has the burden of proving what the needs of the child are by a preponderance of the evidence.