1MAX N. TOBIAS, JR., Judge.
The appellant, Don T.,[1] appeals the judgment of 29 August 2002, wherein his parental rights over his two minor children were terminated.[2] After reviewing the record, the applicable statutes, and relevant jurisprudence, we affirm the judgment of the trial court.[3]
The minor children, K.T. and D.K.T., came into the custody of the State on 21 November 2001, following the death of their eleven-month old sibling, who was living in the home with their mother, Kimberly T. Kimberly T. was present in the home as the man with whom she resided repeatedly punched the child in the chest. Don T., the father of the children, was incarcerated at the time of the child’s death.
Don T. was convicted of manslaughter and sentenced to a term of eighteen years imprisonment on 6 January 1987. He was later paroled and fathered three children: D.K.T. (DOB: 3/2/97), K.T. (DOB: 10/1/99), and C.D.T. (DOB: | ¡,12/18/00). Since October 2000, Don T. has been incarcerated for drinking alcohol, in violation of his parole.
The children were first adjudicated as “in need of care” shortly after being removed from the home. The judgments in the record show that Don T. was notified of and present at the hearings regarding the children held on 27 November 2001, 20 December 2001, 28 January 2002, 19 March 2002, and 27 June 2002. At all hearings, it was stipulated that K.T. and D.K.T. were children in need of care.
A petition to terminate Don T.’s parental rights was filed by the State, Department of Social Services, Office of Community Services (“OCS”), under La. Ch.C. art. 1015(4), abandonment, and/or (6), extended incarceration. The Juvenile Court denied the petition under La. Ch.C. art. 1015(6), extended incarceration, and requested written memoranda regarding the effect of incarceration on abandonment. On 29 August 2002, the court terminated Don T.’s parental rights for abandonment under La. Ch.C. 1015(4). In doing so, the court stated:
I struggled with what was an issue for the Court on the intent, whether or not he intended to abandon his children, struggled with the fact that he was incarcerated, struggled with the issue of his plan and the State’s treatment of the person he identified as a potential placement. To the extent that there are issues in regard to that, I do not believe that they are issues that I can address in the context of this case. The identi *69 fied caretaker and her — or anyone concerned about discrimination based on her age — is not an issue that I believe that I can address in this case. It may or not be an issue that is addressable somewhere else; I don’t believe that I can take it up here.
Based on the cases cited to me in the memoranda submitted to me by the State, I did not see a way in which I could maintain the parental rights of Mr. T[ ... ]. laThe cases indicate that going to jail, under the case law, is a voluntary act. When you do something that breaks the law, that is a voluntary act and that act then is the basis for why you don’t support your children and can’t visit, it’s sufficient to terminate your parental rights based on that, your voluntary act is going to jail. And in that regard, having read the material submitted, I did not see a way that I could avoid terminating the father’s rights and therefore that is my order.
Don T. filed this appeal and presents two assignments of error: that the trial court erred in finding that the State proved he had abandoned his children pursuant to La. Ch.C. art. 1015(4); and that the trial court failed to make a determination of any violation by the State of his 5th and 14th Amendment rights under the United States Constitution.
An appellate court cannot set aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. In re A.J.F., 2000-0948 (La.6/30/00), 764 So.2d 47.
The involuntary termination of parental rights is set forth in article 1015 of the Louisiana Children’s Code, which provides that the grounds set forth in the petition for termination must meet all of the conditions of any one of the enumerated paragraphs. State in the Interest of Latoya W., 97-0695 (La.App. 4 Cir. 2/4/98), 706 So.2d 688. The State is required to prove the grounds for termination by clear and convincing evidence. La. Ch.C. art. 1035(A). Although only one ground for termination need be established, the court must also find that termination is in the best interest of the child. La. Ch.C. art. 1039; State in the Interest of ML, 95-0045, p. 4 (La.9/05/95), 660 So.2d 830, 832.
In State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445, the Supreme Court stated:
More than simply protecting parental rights, our judicial system is required to protect the children’s rights to thrive and survive. Furthermore, a child has an interest in the termination of rights that prevent adoption and inhibit that child’s establishment of secure, stable, long term, continuous family relationships. While the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to insure that parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount best interest of the children.
Id. at pp. 14-15, 719 So.2d at 452 (citations omitted; emphasis added).
Article 1015 of the Children’s Code provides in pertinent part:
The grounds for termination of parental rights are:
[[Image here]]
(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
*70 * * *
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
Don T. was convicted of manslaughter, and on 6 January 1987, sentenced to eighteen years at hard labor. He was subsequently paroled and fathered three children, the first being born on 2 March 1997. On 10 August 2000, Don T. was arrested for drinking, a parole violation. Since his incarceration on the parole |Kviolation, Don T. testified that he has not had contact with his children, directly or through the OCS case manager. He also testified that he believed that he would be released in 2003 with “good time.”
Ms. Deneen Smith, the OCS case manager, testified that she was assigned to the Kimberly T. Don T. children. She filled out the two “Notices of Termination of Parental Law,” one for each parent. Once the forms were completed, she visited Don T. in jail and read the information with him and explained that the form was provided to incarcerated parents in order to develop a plan for his children. Don T.’s plan was for the children to be released from foster care, where they had been since being removed from their mother’s home, and live with their maternal great-grandmother, Dorothy T., or to the children’s great-aunt, Sharon T.[4]
OCS determined that neither woman was a viable placement for the children. The maternal great-grandmother, Dorothy T., was disqualified due her advanced age coupled with the young age of the children, and for her involvement in another child abuse or neglect case.[5] Ms. Smith also spoke to Sharon T., who expressed reservations in caring for the children. Ms. Smith then spoke with Don T. about alternative resources for the children, but he was unable to provide her with any other names for placement of his children.
Ms. Smith testified that she spoke to the Department of Corrections regarding Don T.’s release. She was informed that he was to remain in prison for another twelve years, the remainder of his sentence. She also stated that to her | ^knowledge, Don T. has not provided any type of financial support for the children since at least November 2001, a fact that was confirmed by the appellant.
Ms. Lynn Bikoi, a licensed clinical social worker, testified on behalf of the State. She has worked with the Kimberly T. Don T. children and issued various therapist reports. Ms. Bikoi testified that it was in the children’s best interests that the parental rights be terminated and that they be freed for adoption. However, she strongly recommended that the children be allowed continued contact with their maternal great-grandmother, with whom they visit twice a month.
We find that the State proved the elements of abandonment, one of the enumerated grounds for termination of parental rights, by clear and convincing evidence.[6] *71 It is undisputed that Don T. has not provided any financial support for his children for more than six consecutive months, or maintained any contact with his children whatsoever for more than six consecutive months.[7]
With regard to the issue of Don T.’s inability to provide financial support to children due to his incarceration, our courts have held that a father’s obligation to support his children is not relieved by a jail term. “Courts will not grant relief from parental support obligations to a parent whose joblessness is his own doing.” Rivers v. Rivers, 511 So.2d 30, 31 (La.App. 3 Cir.1987). In Salazar v. Salazar, 582 So.2d 374, 375 (La.App. 4 Cir.1991), we stated:
It is well settled that a parent’s primary obligation is to support his children. LSA-C.C. Art. 227; Laiche v. Laiche, 237 La. 298, 111 So.2d 120 (1959). If a person becomes unable to provide child support by reason of 17circumstances beyond his control, relief will be granted. LSA-C.C. Art. 232; LSA-R.S. 9:304.1; Laiche, id. In determining child support awards, the court must consider the totality of the circumstances. Petrich v. Petrich, 430 So.2d 829 (La.App. 5th Cir.1983). However, a parent will not be relieved of his primary obligation to support his children because of his financial condition brought upon himself. Duhe v. Duhe, 466 So.2d 595 (La.App. 5th Cir.1985). Imprisonment may not be used as an excuse to escape financial consequences of the father’s own voluntary actions. Vidrine v. Vidrine, 567 So.2d 811 (La.App. 3rd Cir.1990); Rivers v. Rivers, 511 So.2d 30 (La.App. 3rd Cir. 1987); Alexander v. Alexander, 417 So.2d 92 (La.App. 3rd Cir.1982). [Emphasis added.]
Although these cases involved the payment of post-divorce child support, the same principle applies to the instant matter. Don T.’s violation of his parole was a voluntary act. From his continuous failure to financially provide for his children for more than six months or have any contact with them through the OCS case manager, the trial court was entitled to find that he was “demonstrating an intention to permanently avoid parental responsibility.” This is a factual finding that is reasonable under the circumstances presented, and is neither manifestly erroneous nor clearly wrong. In addition, the uncontroverted testimony is that a termination of parental rights is in the children’s best interest. Consequently, we find this assignment of error to be without merit.
The appellant’s second assignment of error involves the trial court’s failure to determine whether the State violated his 5th and 14th Amendment rights under the United States Constitution by refusing to place the children with Dorothy T. due to her advanced age. Don T. argues that the State violated his due process rights by interfering in his fundamental interest in the care, custody, and management of his children.
8In response, the State contends that the existence of relatives is generally irrelevant to the termination of parental rights, citing State in the interest of C.J.K., 2000-2504, p. 12 (La.11/28/00), 774 So.2d 107, *72 116-17. That, the State argues, is relevant only to the trial court’s approving placement in the underlying “child in need of care” case, pointing out that Don T. had the opportunity to appeal OCS’s findings that the relatives were inappropriate placements in lieu of foster care in those earlier hearings. We agree.
Further, we note that the trial court terminated the appellee’s parental rights for abandonment, not extended incarceration. The existence of a reasonable plan for the appropriate care of the children, other than foster care, applies only when the grounds for termination is for extended incarceration, but is not a relevant factor when determining whether abandonment has occurred.
Based on the foregoing, we affirm the. trial court’s judgment terminating the parental rights of Don T.

AFFIRMED.

. Because this matter is juvenile in nature, in order to protect the privacy of the parties, the initials of the last name of the parties are used in lieu of their full names

. The court terminated the parental rights of the mother, Kimberly T., on 8 August 2002. She did not appeal that judgment.

.The appellee filed a motion to expedite appeal in this matter. This case was docketed for 11 February 2003. By our prompt rendition of our decision, we grant the appellee’s motion.

. The mother, Kimberly T., named the same two women as possible placements for the children.

. The record reveals that Dorothy T. was 73 years old at the time of the hearing. In addition, her involvement in another case concerned a failure to care for her grandchildren who lived next door to her.

.Because the trial court did not find sufficient evidence to support termination due to the appellant's incarceration, La. Ch.C. art. *71 1015(6), we need not discuss the length of Don T.’s remaining prison term or whether he "failed to provide a reasonable plan for the appropriate care of the child other than foster care.” Id.

. We note, as did the trial court, that OCS would not allow the children to visit Don T. in jail. However, that did not prevent him from contacting them through the OCS worker, which he did not attempt to do.