NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-26

STATE IN THE INTEREST OF C.B., G.B. & I.D.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2014254
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

BILLY HOWARD EZELL
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and John E. Conery, Judges.

AFFIRMED.

**Lloyd Dangerfield**
**703 E. University Ave.**
**Lafayette, LA 70503**
**(337) 232-7041**
**COUNSEL FOR APPELLEE:**
    **D.B. (father)**

**G. Paul Marx**
**District Defender**
**Fifteenth Judicial District Court**
**P. O. Box 3622**
**Lafayette, LA 70502**
**(337) 232-9345**
**COUNSEL FOR APPELLANT:**
    **K.D. (mother)**

**L. Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine Bldg 3, Room 150**
**Lafayette, LA 70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana, Department of Children & Family Services**

**Franchesca L. Hamilton-Acker**
**Acadiana Legal Service Corp.**
**P. O. Box 4823**
**Lafayette, LA 70502-4823**
**(337) 237-4320**
**COUNSEL FOR APPELLEES:**
    **C.B. (child)**
    **G.B. (child)**
    **I.D. (child)**

**Tracey Davenport-McGraw**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**EZELL, Judge.**

K.D. appeals the decision of the trial court terminating her parental rights to her children, C.B., G.B., and I.D.[1] For the following reasons, we hereby affirm the decision of the trial court.[2]

On April 4, 2014, the Department of Children and Family Services (DCFS) received a report of alleged child abuse or neglect concerning the minor children, C.B., G.B., and I.D. According to the report, the children's ten-month-old sibling was found dead in the family home. The deceased child had severe fractures, both old and new, to his ribs, a split skull, internal bruising, and a detached esophagus. It was later learned that K.D.'s live-in boyfriend admitted to murdering the child. K.D. was in the home when the killing occurred. Drug use was suspected, due to K.D.'s physical condition when investigators arrived at the scene. She was observed with facial scabs indicative of methanphetamine use. K.D. was arrested and charged with being an accessory to murder and second degree cruelty to a juvenile. She remains incarcerated as of the time of this appeal.

An instanter order placing C.B., G.B., and I.D. into the custody of the state was issued on April 4, 2014. The children have been together in the home of a foster family who seeks to adopt them all. The DCFS established a case plan for K.D. which included visitation with the children and required K.D. to pay support, as well as requiring K.D. to attend a substance abuse program, a mental health evaluation, and parenting classes. When K.D. failed to substantially comply with

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5-1 and 5-2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

[2]The father of the children did not appeal the termination of his parental rights.

her case plan, the DCFS sought to terminate her parental rights to the children and to place them up for adoption.

After a hearing on the matter, the trial court agreed that K.D. had not complied with her case plan and that termination of her parental rights was in the best interests of the children. From that decision, K.D. appeals.

On appeal, K.D. asserts one assignment of error, claiming that the trial court erred in terminating her rights when she alleges that there was no record she was given the opportunity to reunite with her children. We disagree.

The manifest error standard of review is applicable to involuntary termination of parental rights cases. *State in Interest of I.D.*, 11-1570 (La. App. 3 Cir. 4/4/12), 87 So.3d 351.

> A trial court's factual determinations as to whether there has been substantial compliance with a case plan, whether a significant indication of reformation has been shown, and whether the parent is likely to reform will not be set aside unless the record reflects that the trial court was clearly wrong.

*State in the Interest of G.O.*, 10-571, pp. 5-6 (La.App. 3 Cir. 6/8/11), 68 So.3d 636, 640, *writ denied*, 11-1512 (La. 7/21/11), 67 So.3d 479.

The trial court based its decision to terminate the mother's parental rights on La.Ch.Code art. 1015(5) which provides:

> The grounds for termination of parental rights are:
>
> . . . .
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In a case involving the involuntary termination of parental rights, there are two separate private interests involved: those of the parents and those of the child. *State ex rel. D.L.R.*, 08-1541 (La. 12/12/08), 998 So.2d 681 (citing *State ex rel. K.G.*, 02-2886 (La. 3/18/03), 841 So.2d 759). A parent has a natural and fundamental liberty interest in the continuing companionship, care, custody, and management of their children's lives which warrants great deference. *Id*. At odds with this interest of the parent is the child's profound interest in adoption into a home with proper parental care that provides secure, stable, long-term, and continuous relationships. *Id*.

> The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. La.Child Code art. 1001. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration.

*State ex rel. J.A.*, 99-2905, pp. 8-9 (La. 1/12/00), 752 So.2d 806, 811.

In order to establish the right to an involuntary termination of parental rights, the DCFS must establish two factors: (1) one of the eight statutory grounds for

termination of parental rights under La.Ch.Code art. 1015 by clear and convincing evidence; and (2) that termination is in the best interest of the child. *State ex. rel D.L.R.*, 998 So.2d 681.

In the present case, the trial court determined that K.D. failed to comply with case plan established for her by the DCFS, which is a ground for termination pursuant to La.Ch.Code art. 1015(5). Louisiana Children's Code Article 1036(C) provides that proof that a parent has failed to comply with a case plan may be established by one or more of the following:

> (1) The parent's failure to attend court-approved scheduled visitations with the child.
>
> (2) The parent's failure to communicate with the child.
>
> (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
>
> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
>
> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
>
> (7) The persistence of conditions that led to removal or similar potentially harmful conditions.

Louisiana Children's Code Article 1036(D) further provides, in pertinent part, that proof that there is a lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be established by one or more of the following:

(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.

(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

The record in this case is crystal clear. All four children that lived in K.D.'s home suffered physical abuse. One child died as a result. K.D. was home when the beating that killed her child occurred, she knew it occurred, and she neither stopped it, nor sought medical help for the child afterward. Nor was that the first time the ten month old child had been badly beaten, as indicated by the older fractures to his ribs. These facts are not contested in any way. The record also indicates that two of her children, G.B. and I.D., also indicated that they suffered sexual abuse as well. When the three children were taken from K.D.'s home, they were severely traumatized, physically and mentally, to the point that one could not control her bowels and would even eat her own feces.

K.D. has been in jail for over two years. During that time she has not visited with the children at all. The reasons for this are two-fold: the counselors helping the children did not feel it was appropriate, but also, K.D. herself indicated that she did not want visitation to occur in the jail. There is no evidence in the record that she has communicated with the children. Our courts have held that an obligation to support one's children is not relieved by incarceration. *State ex rel. K.T.*, 02-2009 (La. App. 4 Cir. 2/21/03), 841 So.2d 67. Moreover, she has had a job while incarcerated, but has still provided nothing at all for their support, even though the DCFS indicated that it would take any amount she could send, even if what she earned was less than the $75.00 monthly requirement. While she did complete a

5

substance abuse program while in jail, her charges have not allowed her to take part in the parenting classes offered there. She was scheduled for her mental health evaluation with a doctor working at the hospital, but she did not complete that requirement. These facts are uncontested. In light of the record before us, we can find no error whatsoever in the trial court's decision that K.D. failed to substantially comply with her case plan.

Likewise, the evidence that termination of K.D.'s parental rights was in the best interests of the children was also uncontroverted and resounding. The three children have been living in the home of a family who wants to adopt them. The children have indicated that they have no desire to return to K.D., and even "pleaded to be left with [their fosters]." The children's turnaround was described at trial as "dramatic" and "unexpectedly good." They have progressed from being fearful and showing disturbing signs of abuse to meeting their goals and stopping their prior abnormal behavior. The children are now doing well academically, behaviorally, and socially. They want to be adopted by their fosters and "have soared" in their home. It is clear that the best interests of the children lie in termination of K.D.'s rights and their placement for adoption, so that they can remain in their current home, which provides stability and permanency.

For the above reasons, we affirm the decision of the trial court. Costs of this appeal are hereby assessed against K.D.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.

6