579 So.2d 508 (1991)
Pamela Fox KIRBY
v.
Scott Marvin KIRBY.
No. 90-CA-0058.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1991.
Writ Denied June 28, 1991.
*510 Dawn M. Barrios, Cleveland, Barrios, Kingsdorf & Casteix, New Orleans, for plaintiff/appellant.
Ellen Widen Kessler, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for defendant/appellee.
Before WARD, ARMSTRONG and BECKER, JJ.
ARMSTRONG, Judge.
Plaintiff, Pamela Fox Kirby, appeals the trial court's reduction of monthly alimony payments due her by defendant, Dr. Scott M. Kirby, and the reduction of child support owed by him for the maintenance and support of their minor son. Dr. Kirby has answered plaintiff's appeal seeking a further reduction or termination of alimony, a further reduction in child support, and retroactive application of such reductions. Dr. Kirby also appeals the trial court's finding that he was in contempt for failure to pay current alimony and child support.
Plaintiff and defendant were married in the State of Georgia in 1966. They were divorced in 1981 by a Georgia court. Three children were born of the marriage, Steven, Shayna, and Lisa, aged seven, ten and fourteen, respectively, at the time of the divorce.
In connection with the divorce, the parties entered into a comprehensive settlement agreement in which Dr. Kirby agreed to pay Mrs. Kirby $1,500.00 per month as alimony until her death or remarriage, and child support in the amount of $500.00 per month for each minor child as well as health insurance, medical and dental expenses, and college expenses. Dr. Kirby also agreed to provide an automobile and insurance for Mrs. Kirby. The August 1981 settlement agreement was made a part of the October 1981 Georgia divorce decree.
Although the divorce decree was granted by a Georgia court, at the time neither party actually resided in that state. According to an affidavit executed by Dr. Kirby in connection with his 1982 attempt to vacate the Georgia judgment, the family moved to Daytona Beach, Florida in the summer of 1980 where he set up a private medical practice. In October 1980 Mrs. Kirby and the children returned to Georgia "on a temporary basis," while Dr. Kirby relocated to North Augusta, South Carolina. Mrs. Kirby filed for divorce in a Georgia court in December 1980, but the couple reconciled three weeks later, thereafter living together in South Carolina as man and wife until February 1981. In February 1981 the couple separated again, and Mrs. Kirby returned to Florida; Dr. Kirby remained in South Carolina.
In July 1982, Mrs. Kirby and the children moved from Florida to Arizona. Dr. Kirby apparently returned to Georgia in 1982. *511 Evidence submitted at trial by Mrs. Kirbywhich was not substantially disputed by Dr. Kirbyshowed that beginning in December 1981 Dr. Kirby began to consistently fail to meet his alimony obligation. In November 1982 Dr. Kirby began missing child support payments. In February 1983 Mrs. Kirby filed an action in a Florida court seeking to "domesticate" (make executory) the Georgia divorce decreein June 1983 the Florida court did so. Through garnishment proceedings Mrs. Kirby secured partial child support payments. In December 1983 Dr. Kirby unsuccessfully attempted to have a Georgia court vacate and set aside the 1981 divorce decree.
Dr. Kirby remarried in October 1983 and eventually moved to New Orleans. Subsequently, Mrs. Kirby had the Georgia divorce decree made executory in Louisiana pursuant to La. 13:4241 et seq. In response to various rules filed in Orleans Parish to enforce the divorce decree and settlement agreement the trial court, on December 7 1987, found Dr. Kirby in arrears in the principal amount of $88,442.34, plus legal interest from date of demand, and by amended consent judgment, any and all attorney's fees incurred by Mrs. Kirby through January 29, 1988. Dr. Kirby was ordered to pay all arrearages before January 27, 1988, or make a reasonable effort to do so. The trial court further issued an income assignment order for the maximum amount allowed by law against Dr. Kirby's wages.
On March 15, 1988, Dr. Kirby filed a rule to decrease alimony and child support, the judgment as to which is the subject of this appeal. In response, on April 21, 1988, Mrs. Kirby filed a motion to increase alimony and child support. On June 2, 1988, Mrs. Kirby filed a rule for contempt, alleging that Dr. Kirby was not paying monthly child support and alimony payments as required by the Georgia judgment which had been made executory. In this rule Mrs. Kirby also sought to have all arrearages accruing since January 1988 made executory.
Trial was held on October 17, 1988 on the parties' respective rules to decrease and increase alimony and child support, and Mrs. Kirby's rule for contempt. The trial court issued a written judgment on October 13, 1989, making executory past due child support and alimony in the amount of $31,329.53, together with legal interest from the date each payment was due. The court also awarded Mrs. Kirby $250.00 in attorney's fees and found Dr. Kirby in contempt.
The trial court decreased Dr. Kirby's alimony obligation from $1,500.00 per month to $1,000.00 per month. Dr. Kirby's rule to decrease child support was denied, except that the court eliminated two sections of the settlement agreement, the first providing for an increase in child support in the event of Mrs. Kirby's remarriage, the second providing that the total amount of alimony and child support at all times be the greater of $3,000.00 or 66% of Dr. Kirby's income after deductions for Federal and State income taxes and Social Security.
Mrs. Kirby cites the trial court's reduction of alimony and child support as error. Dr. Kirby claims the trial court erred in failing to further reduce child support and alimony, or terminate alimony completely. Dr. Kirby also claims that the trial court erred in not making the reductions effective from the date his rule was filed, and in calculating the arrearage due.

ALIMONY
Mrs. Kirby claims that the trial court erred in reducing her alimony because Dr. Kirby is contractually bound under the 1981 settlement agreement to pay her alimony until her death or remarriage, or in the alternative, that Dr. Kirby made no showing of a change in circumstances such as would warrant a reduction in his alimony obligation.
1. Right to Seek Reduction of Contractual Permanent Alimony
Initially, Mrs. Kirby raises on appeal the peremptory exception of no cause of action, claiming that under Louisiana law, a spouse has no cause of action to seek a reduction or termination of such contractual alimony.
*512 An appellate court may consider a peremptory exception of no cause of action filed for the first time on appeal if proof of the ground of the exception appears of record. La.C.C.P. art. 2163. We will pretermit discussion of the exception of no cause of action and consider this issue on its merits.
The 1981 settlement agreement provides in part:
WHEREAS, the parties desire to settle amicably between them all questions of temporary and permanent alimony, temporary and permanent child support, child custody and a division of their property; and
WHEREAS, the Husband and Wife do enter into this agreement acknowledging that its provisions are just and fair.
NOW THEREFORE, in consideration of the mutual promises and benefits accruing to each of the parties, it is agreed as follows:
* * * * * *
III.
ALIMONY
In full and complete satisfaction of Wife's rights to alimony from her Husband, the Husband shall make the following periodic payments to the Wife:
1. The sum of $1,500.00 per month as alimony for support and maintenance of the Wife until she dies or remarries.
2. In the event the Wife remarries, it is agreed that the alimony shall cease.
3. The said periodic alimony payments shall be made directly to the Wife on or before the 15th day of each month, the first such payment to be made on the 15th day of the first full month following the date of the execution of this agreement.
Dr. Kirby raises the issue of choice of law. He argues that because the settlement agreement was executed in Georgia, the law of that state should be applied to determine whether the contractual provisions prohibit consideration of his rule to decrease or terminate alimony. The issue is crucial because under Georgia law[1] contractual alimony may always be modified absent an express waiver of that right. Under Louisiana law[2] it appears that Dr. Kirby is precluded from seeking to modify the contractual alimony.
La.C.C. art. 15 addresses the issue of choice of law, and states in pertinent part:
The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect.
Dr. Kirby filed an affidavit in connection with a 1982 Georgia suit to have the 1981 divorce judgment vacated, in which he stated that neither party was living in Georgia at the time the agreement was entered into. Mrs. Kirby was living in Florida, Dr. Kirby in South Carolina. According to the affidavit, Mrs. Kirby thereafter moved to Arizona. Dr. Kirby's federal income tax returns for the years 1982-1986 reflect that he was domiciled in Georgia during those years. Nowhere in the marital agreement is there an indication that the parties intended that it have effect in another state, or more importantly, that the laws of another state apply. The first section of La.C.C. art. 15 would therefore seem applicable, and require that Georgia law be applied.
However, plaintiff raises the "interest analysis" theory, discussed by the Louisiana *513 Supreme Court in Jagers v. Royal Indemnity Company, 276 So.2d 309 (La. 1973). See also Burns v. Holiday Travels, Inc., 459 So.2d 666 (La.App. 4th Cir.1984). The factors relevant to a determination of which state has the greater interest in the litigation, and thus whose law should be applied, are as follows from Restatement, Second, Conflict of Laws, Section 6(2) (1971):
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
Restatement, Second, Conflict of Laws, Section 188 provides in part:
(1) The rights and duties of parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6.
(2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
The factors listed in Section 6(2) vary somewhat in importance from field to field and from issue to issue. Thus, the protection of the justified expectations of the parties is of considerable importance in contracts. See Restatement, Second, Conflict of Laws, Section 188(1).
Georgia courts feel that, absent an express waiver of a party's right to seek modification of a contractual promise to pay permanent alimony until the death or remarriage of a spouse such a contract may be modified. This can benefit both parties, depending upon the circumstances.
Louisiana courts have apparently taken a more restrictive view, interpreting such contractual promises according to straight contract law.
Georgia has an interest in seeing that persons entering into marital settlement agreements in its state have the protection and benefit of its laws when it comes to the enforcement of those contractual agreements. On the other hand, plaintiff has obtained a judgment making the Georgia judgment executory in Louisiana, and she has successfully enforced provisions of the contract in a Louisiana court. One party to the contract is domiciled in Louisiana, the other in Arizona. Georgia has a special policy concerning this type of contractual provision. Louisiana does not. Thus, in terms of effecting special policy interests of the states, the law favors the application of Georgia law.
Although the parties were free to contract that the permanent alimony could be modified, they did not do so. However, the Georgia law in effect at the time the parties entered into the contract allowed modification absent an express waiver of that right. If the parties intended that there be no modification until Mrs. Kirby's death or remarriage, they could have expressly provided for it as required under Georgia jurisprudence. If Dr. Kirby was aware of this state of the law it could have been a cause for his entering into the contract. The protection of the justified expectations of the parties appears to favor applying Georgia law. Georgia law on the subject is *514 fairly simple and straight forward in its application; so is Louisiana's.
Louisiana has an interest in uniformly applying its law, in its courts, when a party or parties are domiciled in this state. However, for the reasons discussed above, we believe that justice will be better served through the application of Georgia law. Georgia has a greater interest in the application of its law than Louisiana.
Plaintiff argues that defendant was required to bring the Georgia law to the attention of the trial court. We disagree. At the time of the hearing in this matter, October 1988, La.C.C.P. art. 1391 provided in part:
Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States.
The court may inform itself of such laws in any manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information.
La.C.C.P. art. 1391 was repealed by Acts, 1988, No. 515, Section 7, effective January 1, 1989. The substance of the quoted portions of this article is now contained in Louisiana Code of Evidence art. 202 (A).[3]
In Gathright v. Smith, 368 So.2d 679 (La.1978), the court found that the first two paragraphs of former La.C.C.P. art. 1391, quoted above, provided an appellate court with the authority to inform itself, sua sponte, and take judicial notice of the law of another state, even when the applicability of that state's law had not been called to the attention of the trial court. Id. at 687. This court has followed Gathright. See Mahmud v. Mahmud, 444 So.2d 774 (La. App. 4th Cir.1984).
Therefore, we find no merit to plaintiff's argument that defendant is precluded from raising the issue of Georgia law.
Georgia law provides that a judgment awarding permanent alimony for the support of a spouse, rendered after July 1, 1977, shall be subject to revision upon petition by a former spouse showing a change in the income and financial status of either former spouse. In Varn v. Varn, 242 Ga. 309, 248 S.E.2d 667 (1978), the Georgia Supreme Court held that:
[P]arties to an alimony agreement may obtain modification unless the agreement expressly waives the right of modification by referring specifically to that right; the right to modification will be waived by agreement of the parties only in very clear waiver language which refers to the right of modification. This ruling will be applied to alimony agreements entered into after November 23, 1978....
Varn has been strictly construed and followed. In Brenizer v. Brenizer, 257 Ga 427, 360 S.E.2d 250 (1987), a written agreement which had been incorporated into a divorce decree provided for permanent alimony. It also provided in part:
10. MODIFICATION. The provisions of this agreement shall not be modified or changed except by mutual consent and agreement of the parties, expressed in writing.
The Georgia Supreme Court reversed a trial court's finding that the parties had by this provision waived their right to modify permanent alimony. Citing Varn, the court found that the waiver language in the agreement did not refer either to the right of modification of alimony, or to any waiver of that right.
In Geraghty v. Geraghty, 259 Ga. 525, 385 S.E.2d 85 (1989), the court held that the following language contained in an "alimony agreement" met the Varn test:
The parties herein waive their Statutory right to a modification now and forever. *515 In this case, although the waiver clause did not refer specifically to the right to modify alimony, it was placed in an "alimony agreement," leaving no doubt which "Statutory right of modification" was being referred to. It also contained the required clear waiver language.
In the instant case, the settlement agreement contains no language recognizing the parties' statutory right to modify permanent alimony, nor does it contain any language evidencing either party's clear waiver of such a right. The agreement generally refers to the parties' desire to settle amicably between them all questions of permanent alimony. It further provides that the agreed upon alimony to be paid by Dr. Kirby is in full and complete satisfaction of Mrs. Kirby's rights to alimony. If anything, this language hints at a waiver by Mrs. Kirby of her right to seek a modification.
Therefore, we find that either party may seek to modify their agreement regarding permanent alimony.
2. Change in Circumstances
Both parties base their arguments concerning a modification of alimony on Louisiana law. Therefore, we will apply Louisiana law to decide this issue.
A party seeking to modify an award of alimony must show a change in the circumstances of one of the parties occurring since the alimony was fixed. Hartman v. Hartman, 534 So.2d 1335 (La.App. 4th Cir. 1988); Gibson v. Gibson, 464 So.2d 914 (La.App. 4th Cir.1985). This rule applies to awards made by consent judgments. Ducote v. Ducote, 339 So.2d 835 (La.1976). A trial court possesses broad discretion in making a determination to modify an alimony award, and its judgment will not be disturbed absent clear error. Gibson v. Gibson, supra; Flamm v. Flamm, 442 So.2d 1271 (La.App. 4th Cir.1983), writ denied, 446 So.2d 1230 (La.1984). Some of the circumstances which may be considered are those specifically listed in La.C.C. art. 112(2) and (3):
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances.
In its reasons for judgment, the trial court cited the case of Ware v. Ware, 461 So.2d 467 (La.App. 5th Cir.1984), for the proposition that a husband should not have to subsidize a lifetime of employment inactivity by his former wife. It found that Mrs. Kirby had demonstrated an ability to support herself, but made no finding regarding this being a change in circumstances. That is, the trial court did not find that at the time of the original judgment awarding alimony, Mrs. Kirby had not demonstrated such an ability to work. The Ware decision itself does not reflect that the circumstances regarding the wife's ability to work had changed, or any other change in circumstances. We do not interpret Ware as dispensing with the requirement that a change in circumstances be shown. If the evidence establishes a change in circumstances regarding Mrs. Kirby's ability to work, or such other change in circumstances warranting a reduction in alimony, the judgment of the trial court as to this issue will not be disturbed.
The testimony of Mrs. Kirby established that at the time of the divorce she had approximately two to two and a half years of college education. There is no evidence that she obtained more useful formal education after the divorce which would make her more employable. The evidence reflects *516 that Mrs. Kirby's first work experience after she was married was one summer at her father's hotel, where she worked as a switchboard operator, desk clerk, and "social director." She said that she didn't work after that during the marriage because her husband did not want her to.
After the 1981 divorce, she worked nine months in Florida for her father, six months as a "gopher," and three months helping sell condominiums. After moving to Arizona, she sold business telephone systems for about nine months. This was in 1982 or 1983. Next, she worked six months as a bank clerk, leaving for a "better job" selling business paper products. She did that for five months but was, she vaguely stated, fired for making too many insurance claims. Six months later she opened a clothing boutique, which, her psychiatrist stated in a deposition introduced at trial, was doing very well. However, she reported losses from that business on her 1986 and 1987 federal income tax returns in the amounts of $5,657.64 and $4,070.00, respectively. She closed the store in December 1987, approximately ten months before trial of this matter. Following that, she went to work for an advertising firm for about one week, and sold office furniture for a month. Mrs. Kirby testified that from January 1988 to the time of trial she sent out approximately 97 resumes. She further testified that between August 1988 and the time of trial there had been "a lot" of job interviews. At the time of trial, Mrs. Kirby was not employed.
Mrs. Kirby testified that besides working for wages and salaries she engaged in volunteer activities. She served on the board of directors of a local organization partially funded by United Way. She also had done volunteer work for a blood donor organization, and a "crisis nursery," the latter, four or five days a week.
Mrs. Kirby maintains that she is unable to work due to her emotional problems. Her psychiatrist, Dr. Richard Gottlieb, testified that Mrs. Kirby first came to see him in June 1987. She was referred to him following a violent outburst upon discovering that her boyfriend of three years was having an affair with another woman. She gave a history of having been hospitalized and treated in 1980 for emotional problems.
Dr. Gottlieb initially diagnosed Mrs. Kirby as suffering from an adjustment disorder with depressed mood. At that time he ruled out major depression and any major psychiatric disorders. Later, he modified his diagnosis, finding that Mrs. Kirby suffered from major depression and a borderline personality disorder. At the time he gave his deposition, October 13, 1988, he said that most of her major depression symptoms had been alleviated to the point that she no longer fulfilled the criteria for someone suffering from a major depressive episode.
Though he stated that because of her low self-esteem and hypersensitivity to criticism she would have problems working, it was Dr. Gottlieb's opinion that Mrs. Kirby was capable of working. The thrust of his testimony was that working would help Mrs. Kirby. He did state, however, that if she experienced a major depressive episode, she probably could not work.
The trial court found that the evidence showed that Mrs. Kirby had the ability to support herself. We agree that the evidence establishes that Mrs. Kirby is able to work and contribute to her own support.
Mrs. Kirby has had seven years to obtain some education and training to qualify her for employment. She has apparently received no formal education or training since the divorce, but she has had a number of different jobs which have endowed her with a certain measure of experience that she did not have at the time of the divorce. We believe this constitutes a change in circumstances. At the time of trial, two of her three children were majors, although they still resided with her. This also is a change in circumstances from the time of the divorce when she had three minor children dependent upon her. This change in circumstances militates in favor of a finding that Mrs. Kirby is more able to work now than in 1981.
*517 There has been a change in circumstances regarding Dr. Kirby also. At the time of the divorce, Dr. Kirby's annual gross income was $61,427.00; at the time of trial, it was $103,600.00 or $8,633.00 per month. Dr. Kirby had two outstanding loans at the time of the divorce, the first with a principal balance of $32,500.00, the second, $10,000.00. At the time of trial the first debt had been reduced to $7,000.00, while the second loan had been repayed in full.
Dr. Kirby's statement of income and expenses listed payroll deductions of $1,890.00, leaving a net income of $6,743.00. He listed monthly expenses totalling $2,676.00, including expenses for his wife and their infant son. $300.00 of the expenses went toward paying off the above-mentioned loan. Dr. Kirby did not list his monthly child support obligation of $500.00, nor his alimony obligation of $1,500.00. He admittedly had not been paying these amounts, although Mrs. Kirby had been receiving $3,493.00 per month since January 1988 from the wage assignment for past due alimony and child support. Without considering the garnishment, but considering the child support and alimony obligationDr. Kirby was found in contempt for not paying these amounts Dr. Kirby had a discretionary income of $2,067.00 at the time of trial. There is no indication of what his expenses were at the time of the divorce nor what his discretionary income was in 1981. We do know that in 1981 he was paying $1,000.00 more a month in child support than he was at the time of trial. However, since his divorce from plaintiff Dr. Kirby has remarried and he and his second wife have an infant son. His second wife, a nurse, was not working at the time of trial. The expenses of Dr. Kirby's second marriage must be considered. Sonfield v. Deluca, 385 So.2d 232 (La.1980).
Dr. Kirby does not own a home, but rents. He drives a 1981 Toyota with 89,000.00 miles on it, while Mrs. Kirby had just purchased a new 1988 Honda, replacing a 1982 automobile she purchased after her divorce.
Mrs. Kirby listed a total of $1,631.42 in monthly expenses for herself. This compares to only $2,676.00 for Dr. Kirby, his second wife, and their infant son. She listed liabilities in the amount of $35,938.88, including a $15,000.00 loan for her new car, a $9,500.00 loan for her daughter's new car, $3,006.00 in attorney's fees, over $4,400.00 in credit card bills, and $2,605.00 in medical bills. Mrs. Kirby said that she did not have any liabilities at the time of divorce. We will not consider the full amount of the liabilities incurred by Mrs. Kirby in purchasing new cars for herself and her daughter, especially when one considers that Dr. Kirby is driving a 1981 automobile. See Gaidry v. Gaidry, 481 So.2d 706 (La.App. 1st Cir.1985).
We find there has been a change in circumstances justifying a modification in the award of alimony. Alimony after divorce is awarded to a spouse not at fault who is without sufficient means for support. La.C.C. art. 112; LeBlanc v. LeBlanc, 362 So.2d 568 (La.1978). Alimony is that which is necessary for the nourishment, lodging and support of the person claiming it. Hogan v. Hogan, 549 So.2d 267 (La.1989).
Considering all of the circumstances of the parties, we are unable to say that the trial court erred in reducing the alimony obligation of Dr. Kirby to $1,000.00 per month. We reject his argument that it should have been further reduced or terminated.

CHILD SUPPORT
In response to Dr. Kirby's rule to reduce child support, the trial court eliminated two contractual provisions from the settlement agreement which could have had an effect on Dr. Kirby's child support obligation to the one remaining minor child residing with Mrs. Kirby in Arizona; Mrs. Kirby has legal custody of the child, Steve. Under the first of these two provisions, Dr. Kirby was obligated to increase his child support payments by 35% per minor child upon Mrs. Kirby's remarriage. Pursuant to the second, Dr. Kirby agreed that the total amount of alimony and child support *518 would at all times be the greater of $3,000.00 or 66% of his income after withholdings for taxes and Social Security.[4]
The agreement between the parties was that Dr. Kirby would pay $500.00 per month in child support for each minor child. Only Steve was a minor at the time of trial. The trial court's ruling did not practically affect the amount of child support that Dr. Kirby isor should bepaying for Steve, $500.00 per month.
Mrs. Kirby does not argue that the trial court erred in ignoring the contractual provisions, but, simply that the trial court erred in modifying Dr. Kirby's child support obligation because he failed to meet his burden of showing that the child's needs had decreased, or that Dr. Kirby's financial condition had worsened, since 1981. The issue of child support will be resolved using the standard for modification as stated under La.R.S. 9:311 (A) which provides:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
La.R.S. 9:311 (A) establishes a single issue for determining whether an award of child support should be increased or reducedproof of a change in circumstances. Kaye v. Kaye, 529 So.2d 879 (La.App. 4th Cir.1988), writ denied, 533 So.2d 377 (La. 1988). The party moving for the increase or reduction bears the burden of proving any such change. There is no evidence in the record showing a change in the circumstances of the minor child, Steve, which would justify a reduction in child support. As to Dr. Kirby's circumstances, his monthly salary is being heavily garnished for payment of arrearages in alimony and child support. However, La.R.S. 9:311 (B) provides:
A judgment for past due support shall not of itself constitute a change in circumstances of the obligor sufficient to reduce an existing award of support.
Considering this provision, a husband cannot neglect to pay child support and then claim a change in circumstances when a judgment for arrearages is made executory and his wages are garnished to pay same. Also, it has been held that a change in circumstances does not justify reduction of a child support award where the inability to pay arises from the obligor's own voluntary actions which render the performance difficult. Laiche v. Laiche, 237 La. 298, 111 So.2d 120 (1959); Kaye v. Kaye, supra. This rule of law can be construed to cover a situation where a husband neglects to pay child support and/or alimony and is stuck with a judgment for arrearages. Under these circumstances, we cannot consider the garnishment of Dr. Kirby's wages for payment of arrearages as a change in his circumstances warranting a reduction in child support.
In 1981, when child support was agreed upon and incorporated into the judgment of divorce, Dr. Kirby's annual income was $61,427.00. At the time of trial, Dr. Kirby testified that his annual income was $103,600.00. Dr. Kirby's statement of income and expenses listed a gross monthly income of $8,633.00, less payroll deductions of $1,890. His net income was $6,743.00.
As previously discussed, Dr. Kirby listed monthly expenses totalling $2,676.00. The expense figure did not include college tuition for the three children of his first marriage, which Dr. Kirby said he hadn't paid since 1987under the terms of the settlement agreement he is obligated to pay the children's college tuition. Dr. Kirby did not list as an expense the $500.00 per month in child support or the $1,500.00 per month in alimony currently due each monthas of the time of trialand which Dr. Kirby admittedly has not been paying since the garnishment for the arrearages took effect. If we consider this amount, a total of $2,000.00 per month, Dr. Kirby *519 would have a monthly discretionary income of $2,067.00.
Mrs. Kirby listed monthly expenses in the amount of $1,818.38 for her minor son, Steve. While some of these expenses may be high, there is no doubt that Steve's monthly expenses amount to at least $500.00. An expense of $500.00 per month is listed for "Doctors." Mrs. Kirby has a notation indicating that there is no insurance coverage for this expense. The child apparently has adolescent adjustment and substance abuse problems and requires psychiatric treatment. Mrs. Kirby testified that he has been hospitalized four times for psychiatric problems. The monthly cost of Steve's anti-depressant medication, $51.18, is also listed as an expense. A total amount of $231.66 is listed for Steve's recreation and allowance, which includes gas, school meals and other spending needs. Mrs. Kirby testified that Steve's needs are greater now because he is a teenagerhe eats more, and has certain recreational and social activity expenses.
In reviewing the trial court's reduction of Dr. Kirby's child support obligation, the extent of which was simply the elimination of two provisions of the settlement agreement, we are mindful of the court's great discretion in these matters. Absent a clear abuse of the court's discretion, we may not disturb its decision. Crane v. Crane, 541 So.2d 250 (La.App. 4th Cir.1989). A review of the evidence does not furnish a basis for a finding of a change in circumstances since the parties entered into the 1981 agreement, such that warrants any type of reduction in Dr. Kirby's child support obligation. Although it is apparent that the provisions of the agreement eliminated do not practically affect the amount of child support the child receives when Dr. Kirby pays it, the trial court's elimination of them was a clear abuse of discretion. Thus, the trial court erred in eliminating Section IV, Subsection (3), and Section IX, Subsection (1) of the 1981 settlement agreement insofar as they pertained to child support.
The trial court denied Mrs. Kirby's rule to increase child support. Considering all of the relevant circumstances, we are unable to say that the trial court clearly abused its discretion in finding no change in circumstances sufficient to warrant an increase in child support.

CONTEMPT
Dr. Kirby next argues that the trial court erred in holding him in contempt for failing to pay alimony and child support sums accruing between January 1988, when the garnishment for arrearages took effect, and the time of trial. Although he admits there was nothing in the record to substantiate this, Dr. Kirby maintains that it was his understanding that only after the satisfaction of the December 1987 judgment of arrearages via the garnishment would amounts accruing since January 1988 be paid.
The trial court imposed no penalty or sentence on Dr. Kirby on the contempt citation. La.C.C.P. art. 224(2) empowers a court to find a party in constructive contempt of court for the "wilful disobedience" of any lawful judgment of the court. Wilful disobedience means an act or failure to act that is done intentionally, knowingly and purposely, without justification. New Orleans Firefighters Association Local 632 v. City of New Orleans, 260 So.2d 779 (La.App. 4th Cir.1972), affirmed, 263 La. 649, 269 So.2d 194 (La.1972), U.S. cert. denied, 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 392 (1973); Martin v. Martin, 457 So.2d 189 (La.App. 2d Cir.1984). A trial court is vested with great discretion in determining whether a party should be held in contempt for wilful disobedience of a trial court judgment. Tschirn v. Tschirn, 434 So.2d 113 (La.App. 5th Cir.1983).
As of January 1988, Mrs. Kirby began receiving $3,493.00 per month from Dr. Kirby through the garnishment of his wages. This was to be paid until the total arrearages as of the date of the December 1987 judgment, $88,442.34, plus interest and attorney's fees, were paid. Dr. Kirby's income at the time of trial, after accounting for payroll deductions and expenses, was $4,067.00 per month. Thus, it cannot be said that Dr. Kirby's failure to *520 pay the $2,000.00 per month in current alimony and child support was justified. Considering these circumstances, we are unable to say that the trial court abused its discretion in finding Dr. Kirby in contempt.

CALCULATION OF ARREARAGES
Dr. Kirby next submits that the trial court incorrectly calculated the amount of arrearages due Mrs. Kirby. Mrs. Kirby presented documentary evidence to support a claim for arrearages in the amount of $30,101.05 plus interest. The trial court awarded her $31,329.53 plus interest. In a supplemental brief, Mrs. Kirby submits that the trial court's figure is also incorrect as it does not include amounts for payment of her car note and automobile insurance which are in arrears. These amounts were not included on Mrs. Kirby's statement of current arrearages submitted at trial.
Section VI, Subsection (1) of the settlement agreement does state that Dr. Kirby will provide for Mrs. Kirby's use "an automobile in good operation and working order, said automobile to be no more than one year old at the time of the execution of the Agreement...." The automobile Mrs. Kirby was driving at the time of trial was not the one which she acquired as a result of the settlement agreement, but a new one for which she is paying monthly notes. There is some ambiguity as to whether this clause of the agreement obligates Dr. Kirby to provide Mrs. Kirby with more than the one automobile she left the marriage with. Therefore, we cannot find Dr. Kirby in arrears for not making Mrs. Kirby's car notes for a new automobile.
Section VIII, Subsection (3) of the settlement agreement obligates Dr. Kirby to provide full coverage automobile insurance "for the automobile furnished to [Mrs. Kirby]...." Again, this clause of the agreement could be interpreted to only obligate Dr. Kirby to provide such insurance coverage for the automobile Mrs. Kirby left the marriage with, which was not the automobile she was driving at the time of trial. We cannot find Dr. Kirby in arrears for not paying Mrs. Kirby's automobile insurance on this vehicle.
For some reason, Dr. Kirby seeks to have this court amend the judgment to include as arrearages, alimony and child support accruing between the date of trial and the trial court's rendering of judgment. These amounts were not considered by the court and cannot properly be included in its judgment. Setting aside the question of the retroactive application of the reduction of alimony, the trial court should have awarded Mrs. Kirby $30,101.05 in arrearages plus interest.
La.R.S. 9:310 (A) provides that an order for alimony shall be retroactive to the filing date of the petition therefor, unless the court finds good cause for not making the award retroactive, in which case the court may fix the date such award will become due. Hogan v. Hogan, supra. The award of arrearages is clearly based upon monthly alimony in the amount of $1,500.00 for the months March 1988 through through and including October 1988. The award would have been some $4,000.00 less than it was had the trial court made it retroactive to March 17, 1988, the date Dr. Kirby filed his rule. Implicit in the trial court's award of arrearages is a finding of good cause for not making the reduction retroactive to the date of Dr. Kirby's rule for reduction.
We find that the trial court could have found good cause in Dr. Kirby's unilateral failure to fulfill his alimony and child support obligations. Owens v. Owens, 489 So.2d 321 (La.App. 4th Cir.1986). Therefore, the trial court's reduction of alimony shall be effective from the date of judgment, rather than the date Dr. Kirby's rule was filed.
We will amend the judgment of the trial court to award Mrs. Kirby $30,101.05 in arrearages, plus interest.
For the foregoing reasons, we reverse the judgment of the trial court in part, affirm it in part, amend it in part, and recast it as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor *521 of plaintiff, Pamela Fox Kirby, and against defendant, Scott Marvin Kirby, hereby making executory past due child support and alimony in the amount of THIRTY THOUSAND ONE HUNDRED AND ONE AND 05/100 DOLLARS ($30,101.05), together with legal interest from the date each payment of alimony and child support was due, plus attorney's fees of TWO HUNDRED FIFTY AND NO/100 DOLLARS ($250.00) and all costs of the rule.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of defendant, Scott Marvin Kirby, and against plaintiff, Pamela Fox Kirby, granting him a decrease in alimony from the present sum of FIFTEEN HUNDRED AND NO/100 DOLLARS ($1,500.00) per month to the sum of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00) per month, effective October 13, 1989.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant, Scott Marvin Kirby, be found in contempt of the trial court's earlier order making executory the original divorce decree, his sentence to be pretermitted.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the rule to increase child support and alimony filed by plaintiff, Pamela Fox Kirby, against defendant, Scott Marvin Kirby, is denied.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the rule to decrease child support filed by defendant, Scott Marvin Kirby, against plaintiff, Pamela Fox Kirby, is denied.
AFFIRMED IN PART, AMENDED IN PART, RECAST.
NOTES
[1] See discussion infra.
[2] Wagner v. Wagner, 535 So.2d 1269 (La.App. 3rd Cir.1988), writ denied, 538 So.2d 592 (La. 1989); Favret v. Favret, 527 So.2d 463 (La.App. 5th Cir.1988), writ denied, 532 So.2d 114 (La. 1988); Romero v. Romero, 509 So.2d 681 (La. App. 3rd Cir.1987), writ denied, 512 So.2d 427 (La.1987); Bonck v. Bonck, 500 So.2d 798 (La. App. 1st Cir.1986), writ denied, 501 So.2d 774 (La.1987); Klein v. Klein, 485 So.2d 970 (La. App. 5th Cir.1986), writ denied, 489 So.2d 921 (La.1986); Jones v. Jones, 459 So.2d 1200 (La. App. 5th Cir.1984), writ denied, 462 So.2d 649 (La.1985); Beringer v. Beringer, 415 So.2d 429 (La.App. 1st Cir.1982); King v. King, 390 So.2d 250 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 884 (La.1981).
[3] La.C.E. art. 202 (A) provides:

"Mandatory. A court, whether requested to do so or not, shall take judicial notice of the laws of the United States, of every state, territory, and other jurisdiction of the United States, and of the ordinances enacted by any political subdivision within the court's territorial jurisdiction whenever certified copies of the ordinances have been filed with the clerk of that court."
Comment (a) states that this article "essentially" follows prior Louisiana law.
[4] The trial court's reduction of alimonyand our affirmation of that reductionhas the effect of eliminating any part of this provision which could operate to require Dr. Kirby to pay more than $1,000.00 per month in permanent alimony to Mrs. Kirby.