993 So.2d 354 (2008)
SUCCESSION OF Edward A. HORRELL, Sr.
No. 2007-CA-1533.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 2008.
Rehearing Denied November 12, 2008.
*357 Walter J. Horrell, Covington, LA, In Proper Person, Appellant.
Lisa C. Matthews, Kathleen D. Lambert, Stephenson, Matthews, Chavarri & Lambert, LLC, New Orleans, LA, for Lisa C. Matthews, Provisional Administratrix.
Jack M. Alltmont, Max Nathan, Jr., Eric M. Schorr, Sessions Fishman Nathan & Israel, L.L.P., New Orleans, LA, for Clare Younger Horrel, Gaye H. Coffer, Michael J. Horrell, Edward Horrell, Jr., Marie Elise Lecour.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
TERRI F. LOVE, Judge.
This appeal arises from protracted succession litigation. We find no error in the trial court's finding of contempt on the part of Walter Horrell and the imposition of sanctions upon him for his contemptuous behavior. Further, we find no error in the trial court's denial of Walter Horrell's Exception of No Right of Action and the trial court's order that Mr. Levenson be paid for his services and that he continue to act as Walter Horrell's agent for service of process and affirm. We also find that the trial court did not exceed its authority in granting an interim payment to the Provisional Administratrix of the Succession and charging payment of fees and costs incurred to Walter Horrell and affirm.
However, as we find no statutory basis for the payment of "damages" in the form of attorney fees incurred by Clare Younger Horrell, Edward A. Horrell, Jr., Michael Horrell, Elise LeCour, and Gay Coffer for Walter Horrell's contemptuous behavior, we amend that portion of the trial court's judgment and find the damages imposed as a fine of $500 payable to the trial court. We reverse the portion of the judgment placing the Horrells in partial possession and remand the matter to the trial court for further orders on the required accountings of the Provisional Administratrix before delivery of the decedent's legacy.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The facts and procedural history of the Succession of Edward A. Horrell, Sr. ("Succession") are contained in Succession of Horrell, 95-1598, pp. 1-4 (La.App. 4 Cir. 9/11/96), 680 So.2d 725, 725-27:
Edward A. Horrell, Sr. died July 9, 1993, at age 84, leaving his wife of more than fifty years, Clare Younger Horrell (Mrs. Horrell), and five adult children, Walter (born in 1939), Gaye (born 1940), Michael (born 1942), Edward, Jr. (born in 1946), and Marie Elise a/k/a "Liz" (born in 1948). Shortly after his death, Mrs. Horrell filed a petition and order for appointment of administratrix with a sworn descriptive list, stating that Mr. Horrell died intestate.
The detailed descriptive list indicates that at the time of his death Mr. Horrell owned the following separate immovable property: The family home at 505 Florida Avenue (valued at $125,000) and industrial property at 2020 Lafayette Street (valued at $150,000), both in New Orleans, as well as an entire city block located at 19th and Tyler Streets in downtown Covington (valued at $300,000).
Mr. Horrell owned, as community property with his wife, a camp located in Lake Catherine, Louisiana (valued at $50,000), and the industrial property at 4821 Earhart Boulevard in New Orleans where his company (Horrell and Company, Inc.) business office and warehouse *358 were located (valued at $200,000). In addition, Mr. and Mrs. Horrell owned as joint tenants with a right of survivorship a house in Bay St. Louis, Mississippi (valued at $125,000) and two lots in Diamondhead, Mississippi (valued at $24,000).
Several days prior to the filing of Mrs. Horrell's petition and descriptive list, however, the Horrell's oldest son, Walter, sought to have his father's statutory will (executed on April 13, 1993) probated. It provided the following:
I, Edward A. Horrell, make this my last will and testament. I hereby revoke any prior wills or codicils that I may have made.
I give, grant, donate and bequeath the usufruct of all shares that I own in companies listed on the New York Stock Exchange and the usufruct of my home located at 505 Florida Boulevard, New Orleans, Louisiana, to my spouse, Clare Younger Horrell, for the rest of her life.
Subject to the usufruct of the premises at 505 Florida Boulevard, New Orleans, Louisiana, granted to my spouse, I give, grant, donate and bequeath all the immovable property (real estate) that I own in the Parish of Orleans, State of Louisiana, to four of my five children, namely Marie Elise Horrell, wife of Paul LeCour, Edward A. Horrell, Jr., Michael J. Horrell, and Gay Ann Horrell, divorced wife of John B. Coffer.
I give, grant, and bequeath all the immovable property (real estate) that I own in the Parish of St. Tammany, State of Louisiana, to my fifth child, Walter J. Horrell.
I give, grant, donate, and bequeath all the remainder of my property to my five children, Walter J. Horrell, Gay Ann Horrell, divorced wife of John B. Coffer, Michael J. Horrell, Edward A. Horrell, Jr., and Marie Elise Horrell, wife of Paul LeCour. I make them my universal legatees.
I name and appoint Walter J. Horrell as executor of my succession with full seizin and without bond or security.
The will, which had been prepared by Walter's daughter, Mary F. Horrell, a notary public, was signed in Mr. Horrell's hospital room at Mercy Hospital and witnessed by Edna a/k/a "Betty" Horrell (Walter's wife) and Allen E. Horrell (Walter's son) with Walter present. On the same day that Mr. Horrell signed the will, he also signed an Act of Donation prepared by Walter (who was an attorney) giving Walter the property in Covington.
The record indicates that six weeks after discovering the act of donation filed in the St. Tammany public records, Walter A. Horrell, Sr. ("Mr. Horrell, Sr.") signed a revocation of donation prepared by an attorney hired by some of his children. The prior case continues to state that:
On July 23, 1993, Mrs. Horrell was appointed administratrix. On August 31, 1993, she and four of her children (Gaye, Michael, Edward, and Marie Elise) petitioned to have the will declared invalid, alleging lack of testamentary capacity, undue influence, lack of sufficient number of witnesses, and conflict of interest. The two proceedings (the intestate succession filed by Mrs. Horrell and the testate succession filed by Walter) were consolidated on December 22, 1993.
On Jan. 10, 1994, Walter sought to remove his mother as administratrix and to have all the succession property delivered to him as executor. He alleged that his mother (1) failed to include two vehicles (a 1980 truck and a car) in the descriptive list; (2) used only rough *359 estimates in valuing the succession property; (3) commingled funds and continued to write checks for her own purposes; (4) paid succession debts without authorization of the court; (5) had taken steps to continue the business without complying with codal requirements and failed to operate it for the benefit of the succession. The trial court granted Walter's motion, removing Mrs. Horrell as administratrix and ordering her to deliver all succession property to Walter.
On March 23, 1994, an accountant completed a list of deposits and disbursements in the Horrells' four bank accounts. In April, Walter filed a rule for contempt because his mother had failed to deliver the succession property to him. On April 7th, Mrs. Horrell petitioned for an interim allowance because Walter was receiving the stock dividends which Mr. Horrell had transferred to her prior to his death giving her an annual income of approximately $21,140 in monthly payments of $700 and quarterly payments of $3000. Walter opposed the petition, arguing that his mother received social security payments of $750 per month and that the house in Mississippi (where his sister Gaye lived) "should be producing income in the approximate amount of $600 per month."
On Sept. 28, 29, and October 3, 1994, a hearing was held on the petition to nullify the will and the rule to remove Walter as executor. On November 17, 1994, the trial court denied both, stating that Walter's siblings failed to prove by clear and convincing evidence that Mr. Horrell lacked testamentary capacity when he executed the April 13th testament. The trial judge found that the testimony of Walter, his wife, and children as to what occurred on the evening of April 13 was consistent in all material respects and "made it clear that Mr. Horrell had total control and use of his faculties, that he was aware of his surroundings and that he knew exactly what he was doing." The trial judge dismissed the testimony of Dr. Harvey Rifkin, stating that his psychiatric examination of Mr. Horrell shortly after the will was executed was based on inadequate facts and contradicted by the testimony of Dr. Robert Jeanfreau, Mr. Horrell's treating physician.
The Succession subsequently became the subject of proceedings in Matthews v. Horrell, 06-1976, pp. 5-10 (La.App. 1 Cir. 11/07/07), 977 So.2d 62, 66-70, which surmised the following:
In the succession proceeding, the other heirs of Mr. Horrell appealed the trial court judgment upholding the testamentary dispositions and contended on appeal that Mr. Horrell lacked capacity to execute the will or that the will was a product of fraud and/or undue influence exerted by Walter and his daughter Mary. The Fourth Circuit reversed the trial court judgment denying the petition to nullify the will, finding manifest error, and ruling that objective evidence, as well as the medical testimony, made it clear that Mr. Horrell lacked the requisite understanding of the nature of the testamentary act and its effects (issues of undue influence and fraud were not reached). Accordingly, the judgment of the trial court was reversed, the Petition for Declaration of Invalidity of Alleged Testament and the Motion to Remove Executor were granted, and the matter was remanded for further proceedings. Succession of Horrell, 95-1598 at pp. 8-9, 680 So.2d at 729.
On remand to the Civil District Court for the Parish of Orleans, Walter J. Horrell's petition to be appointed administrator *360 of his father's succession was denied, and Hibernia National Bank was appointed as administrator, conditioned upon the acceptance of the appointment; another appeal was made to the Fourth Circuit on these rulings. In its review, the Fourth Circuit noted the oral reasons of the trial court for judgment:
If I was just looking at this case in a vacuum, it may be easy to say that Walter, of all the heirs is more qualified because of his experience as an attorney and his stability, as oppose[d] to Michael, whose employment record has not been as stable and I personally have viewed some of his outburst[s] of temper in this courtroom, but I can't look at this case in a vacuum. I look at this case as the Court of Appeal has decided that a son got his father, who lack[ed] the requisite mental capacity to sign a will. Now, they did not-you're right, they didn't talk about fraud, and perhaps if Walter, you were a third party and were disinterested in getting what was in the will decided, one would say, well it really doesn't matter. If a lawyer went and just got someone to sign a will, they may not be capable of telling whether someone lacked the mental capacity, but as the child of that person, and certainly, I can tell when my parents are functioning at a high level, middle level, low level, you know the person well. And I don't think in good conscious, [sic] because of that, and because of the extraordinary animosity that exist[s] in this case, I can appoint you as the administrator. Succession of Horrell, 97-2115, pp. 2-3 (La.App. 4 Cir. 3/25/98), 709 So.2d 1069, 1070, writ denied, 98-1023 (La.5/29/98), 720 So.2d 669.
In that appeal, Walter Horrell contended that he was qualified to serve as administrator of this succession. In support of his position, Walter pointed to the fact that he was a practicing attorney, that he had served as executor of the succession for three years, and that he had performed his duties in a professional and timely manner. Walter also contended that the evidence presented indicated that he voted regularly, was not in debt, had never been contacted by a bill collector, had never had a lien of any type filed against him, had been happily married to the same woman for thirty-eight years, had raised three children, had been employed as an attorney by the State of Louisiana for more than thirty-one years with an unblemished record, had never been arrested or convicted of a crime, and had operated a motor vehicle in excess of forty-two years without ever having received a traffic ticket. Walter asserted that he did not have the profile of a person of bad moral character, despite the trial court's rejection of this claim at trial. Walter Horrell argued to the Fourth Circuit that the trial court therefore had no basis for disqualifying him. Succession of Horrell, 97-2115 at pp. 3-4, 709 So.2d at 1071.
Hibernia National Bank did not accept the appointment as administrator. The Orleans Parish district court then appointed Lisa C. Matthews ("Provisional Administratrix") as administrator and the remaining heirs substituted themselves as plaintiffs.
The First Circuit further noted:
In upholding the trial court's rulings, the Fourth Circuit reasoned:
In the present case, the trial court found that there was an extraordinary amount of animosity between the family members in this case. Further, in refusing to qualify Walter Horrell as administrator, the court noted [Walter *361 Horrell's] role in having his deceased father execute a will which was later determined by this court to be confected without testamentary capacity. The trial court apparently made a factual finding that Walter was aware that his father may have lacked testamentary capacity prior to executing the will, but nevertheless submitted the document to him. In reaching this conclusion, the trial court relied on the previous decision of this Court which invalidated the will.
"Bad moral character" does not only include the traditional types of behavior or previous bad acts which would indicate that one is not fit to assume the responsibilities of administrator of a succession. In the present case, the trial court found that Walter's involvement in the execution of his father's will which was subsequently found to be invalid due to lack of testamentary behavior constituted bad moral character sufficient to disqualify him from serving as administrator of his father's succession. Although there were no allegations or proof of fraud in the case, Walter benefited from the provisions of the will in that he would have inherited to the exclusion of the remaining heirs a substantial piece of real estate in St. Tammany Parish. There is also evidence that the decedent executed an Act of Donation of this immovable property in favor of Walter which is being contested and the litigation must be pursued by the succession's administrator.
Even assuming Walter's character is pristine in all respects other than his involvement in the execution of his father's will and the act of donation, we find that the circumstances here, in addition to the animosity among the family members which was noted by the trial court, were sufficient to support a finding that Walter could not serve as administrator. After carefully reviewing the allegations made in this case and the evidence presented at the contradictory hearing, we cannot say that the trial court abused its discretion in refusing to appoint Walter Horrell as administrator of this succession on the basis of LSA-C.C.P. art. 3097. Succession of Horrell, 97-2115 at pp. 4-5, 709 So.2d at 1071.
The validity of the Act of Donation was litigated in the district court in St. Tammany Parish, which granted summary judgment in favor of Walter Horrell's co-heirs invalidating the donation and declaring the issue of Edward A. Horrell, Sr.'s mental status res judicata, citing the Fourth Circuit's prior judgment. On appeal of that matter to this court, the following additional facts were stated:
On April 13, 1993, Mr. Horrell made an inter vivos donation of his separate property located in Covington, Louisiana to his son, Walter J. Horrell, Sr. The donation was valid in form, by authentic act and recorded in the conveyance records in St. Tammany Parish. That same day, Mr. Horrell executed a testament which also gave the Covington property to Walter. Walter presented both of these documents to Mr. Horrell, who was eighty-four years old, while Mr. Horrell was hospitalized in Mercy Hospital in New Orleans, Louisiana.
When Mrs. Clare Horrell, Mr. Horrell's wife, and their adult children learned of the donation, they presented Mr. Horrell with a "Revocation of Donation" which he executed on May 21, 1993. That document purported to annul the donation to Walter for "acts of ingratitude, cruel treatment *362 and grievous injury." Mr. Horrell also executed a document granting Mrs. Horrell power of attorney over his affairs.
When Walter learned of the acts of his mother and siblings, he procured Mr. Horrell's signature on a document revoking the power of attorney in favor of Mrs. Horrell and on an incomplete petition to dismiss any suit Mrs. Horrell may file to revoke the donation.
On July 7, 1993, Mrs. Horrell petitioned the district court in St. Tammany Parish to revoke the inter vivos donation of the Covington property. The petition named Mr. Edward Horrell and Mrs. Horrell as his agent as Plaintiffs. Mr. Horrell died on July 9, 1993. On August 26, 1993, Walter filed a peremptory exception of no right of action asserting that Mrs. Horrell could not bring the action for these reasons: (1) Mr. Horrell had revoked the power of attorney; (2) Mr. Horrell's death terminated the mandate as a matter of law; and, (3) Mrs. Horrell had no interest in the Covington property since it was the separate property of her deceased husband.
On August 31, 1993, Mrs. Horrell amended the petition to appear as Administratrix of the Succession of Edward A. Horrell, Sr., asserting that Mr. Horrell had lacked the mental capacity to execute the Act of Donation on April 13, 1993 and that he had executed a revocation of the donation on May 21, 1993. Walter responded by filing exceptions of vagueness and no right of action contending that since Mr. Horrell had died testate and had appointed a testamentary executor who was not Mrs. Horrell, then Mrs. Horrell was not the legitimate succession representative.
Mrs. Horrell responded on April 15, 1997 by petitioning the court to amend her petition to substitute her other children, Gaye Horrell Coffer, Michael Horrell, Edward Horrell, Jr., and Marie LeCour as Plaintiffs (referred to collectively as "Plaintiffs"). These Plaintiffs declared that they were substituted as Plaintiffs in order to "represent and protect their own interests" in the Covington property. Walter then filed a motion entitled "Exceptions" on June 10, 1997. Therein he alleged insufficiency of service of process, vagueness, lack of capacity and "all other declinatory and dilatory exceptions." The trial court denied all of these exceptions on September 26, 1997.
Walter sought to probate the will in the Succession of Horrell in Orleans Parish. Mrs. Horrell and the Plaintiffs petitioned that court to annul the will on the ground that Mr. Horrell had lacked the mental capacity to execute a testament. That suit proceeded simultaneously with the instant suit.
On January 14, 1998, the trial court heard the exceptions of vagueness and no right of action regarding the First Supplemental Petition in which Mrs. Horrell appeared as administratrix of the Succession of Horrell. Without explaining its reasons, the trial court denied the exceptions.
On January 16, 1998, Walter filed a peremptory exception of no cause of action, challenging the Plaintiffs' claim that the donation was made under duress. The Plaintiffs filed a motion to strike the exception which the trial court granted. The trial court then ordered Walter to answer the petition.

*363 Walter filed his answer on February 29, 1998. Immediately thereafter, the Plaintiffs moved for summary judgment based on res judicata. Their argument was that the Fourth Circuit Court of Appeal had found Mr. Horrell lacked the mental capacity to execute a testament on April 13, 1993, and therefore, Mr. Horrell also kicked (sic) the capacity to make an inter vivos donation that day. The trial court granted summary judgment. Horrell v. Horrell, 99-1093, pp. 2-4 (La.App. 1 Cir. 10/6/00), 808 So.2d 363, 366-67, on rehearing, 99-1093 (La.App. 1 Cir. 8/15/01), 808 So.2d 372, writ denied, 2001-2546 (La.12/7/01), 803 So.2d 971 (footnote omitted).
Noting that Lisa Matthews was appointed as provisional administratrix for the succession on July 3, 1997 in Orleans Parish, this court concluded that neither Mrs. Horrell, nor the co-heirs of the estate, were proper party plaintiffs to assert a right of the succession while the succession was under administration. Horrell v. Horrell, 99-1093 at pp. 7 and 11, 808 So.2d at 369 and 371. In so holding, this court further reasoned:
That leaves Mrs. Horrell in her individual capacity as surviving spouse of Mr. Horrell. Following the Fourth Circuit's judgment annulling Mr. Horrell's testament due to his lack of mental capacity, Mr. Horrell's estate must devolve according to the laws of intestacy. The Covington property which was the object of the donation inter vivos was Mr. Horrell's separate property. Mr. Horrell's descendants succeeded to his separate property under the laws of intestacy. La. Civ.Code arts. 880 and 888. Mrs. Horrell, as his surviving spouse, would only have an interest in this property if Mr. Horrell had left neither descendants, nor parents, siblings or descendants from them. La. Civ.Code art. 894.

Horrell v. Horrell, 99-1093 at p. 7, 808 So.2d at 369. The trial court ruling in favor of plaintiffs was therefore reversed and the case remanded to the lower court for substitution of the proper party plaintiff. On motion of the heirs to substitute Ms. Matthews as plaintiff and for rehearing, this court granted the motion, allowed substitution of Ms. Matthews as plaintiff, and affirmed the trial court's summary judgment invalidating the donation inter vivos based on res judicata. Horrell v. Horrell, 99-1093 at p. 8, 808 So.2d at 376 (on rehearing).
The Fourth Circuit subsequently had the opportunity to review this case again in an unpublished decision rendered in In re Succession of Horrell, XXXX-XXXX (La.App. 4 Cir. 11/12/03), 859 So.2d 318 (table), writ denied, XXXX-XXXX (La.4/8/04), 870 So.2d 273, which affirmed certain district court rulings regarding an amended detailed descriptive list filed into the Orleans Parish succession.
Following the above factual and procedural backdrop, the case sub judice arose from the trial court's judgment granting a Motion for Contempt, Sanctions and Attorneys Fees against Walter J. Horrell ("Mr. Horrell") and a Motion for Partial Possession. The trial court ordered Mr. Horrell 1) to be present at an appraisal; 2) to pay Leonard Levenson ("Mr. Levenson") $1,559.34 for services rendered as his agent for service of process, as well as future charges; 3) to pay $100,000 out of his share of the Succession to Sessions, Fishman & Nathan, L.L.P. for attorneys fees; and 4) to pay the portion of the Provisional Administratrix's fees and costs "attributable to" his "contemptuous conduct." After considering post-trial memoranda, *364 the trial court ordered Mr. Horrell to pay $81,781.44 as his portion of the Provisional Administratix's fees and costs.
Additionally, when the trial court granted the Motion for Partial Possession, it ordered a distribution of $300,000 to his siblings. The Provisional Administratrix was also granted a $147,628.82 interim payment. Mr. Horrell appeals the trial court's judgments in totem.

STANDARD OF REVIEW
Statutes authorizing the imposition of penalties or sanctions are penal in nature and are to be strictly construed. Albe v. Albe, 97-1042 (La.App. 4 Cir. 11/19/97), 703 So.2d 756, 759. Appellate courts review the imposition of sanctions using the manifest error/clearly wrong standard. Mathis v. Mathis, 06-1589, p. 3 (La.App. 4 Cir. 7/25/07), 964 So.2d 426, 428.
Guilt of constructive contempt requires a violation of an order of the court "intentionally, knowingly and purposely, without justification." Kirby v. Kirby, 579 So.2d 508, 519 (La.App. 4th Cir.1991). The trial court's decision regarding a finding of constructive contempt will be reversed when the trial court was manifestly erroneous. Talton v. USAA Cas. Ins. Co., 06-1513, p. 27 (La.App. 4 Cir. 3/19/08), 981 So.2d 696, 713.
Peremptory exceptions raising the objection of no right of action are reviewed de novo on appeal as it involves questions of law. Turner v. Law Firm of Wolff & Wolff, 07-1589, p. 2 (La.App. 4 Cir. 6/4/08), 986 So.2d 889, 891.

CONTEMPT
Clare Younger Horrell, Edward A. Horrell, Jr., Michael Horrell, Elise LeCour, and Gay Coffer ("Horrells") filed a Motion for Contempt, Sanctions and Attorney's Fees against Mr. Horrell, wherein they alleged that he violated La. C.C.P. art. 863. The trial court found Mr. Horrell in contempt of court on three counts: 1) misuse of the judicial system; 2) failure to comply with the court's order to allow the Provisional Administratrix, the notary and the appraisers into his residence to inventory and appraise property of the Succession; and 3) avoiding service.
In Smith v. Smith, 35,378, pp. 5-6 (La.App. 2 Cir. 9/26/01), 796 So.2d 726, 730, the court addressed contempt and the appeals process as follows:
As a threshold matter, we note that a judgment holding a party to a lawsuit in contempt of court is not a judgment from which an appeal may be taken. The aggrieved party's appropriate remedy in such a case is to apply for supervisory writs. City of Monroe v. Evans, 385 So.2d 912 (La.App. 2d Cir.1980); Pearce v. Dozier, 181 So.2d 432 (La.App. 2d Cir.1965); State v. Sampson, 498 So.2d 1145 (La.App. 3d Cir.1986); Slaughter v. Slaughter, 499 So.2d 1123 (La.App. 3d Cir.1986); Matter on Carter, 357 So.2d 1175 (La.App. 3d Cir. 1978), writ denied, 358 So.2d 949 (La. 1978). Although the majority of Louisiana jurisprudence holds that contempt judgments are not appealable, some cases have permitted a review on appeal where the appellate court was reviewing other related appealable matters. City of Monroe v. Evans, supra; Bruner v. Bruner, 373 So.2d 971 (La.App. 2d Cir. 1979); Weeks v. Weeks, 349 So.2d 1008 (La.App. 2d Cir.1977); Lambert v. Adams, 347 So.2d 883 (La.App. 3d Cir. 1977).
However, as Mr. Horrell has raised the additional, appealable issues, we will review the correctness of the contempt judgment.
*365 Contempt of court, as defined in La. C.C.P. art. 221, is "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." "The authority to punish for contempt of court falls within the inherent power of the court to aid in the exercise of its jurisdiction and to enforce its lawful orders." de Nunez v. Bartels, 97-1384, p. 13 (La.App. 1 Cir. 9/9/98), 727 So.2d 463, 470, citing In re Merritt, 391 So.2d 440, 442 (La.1980).
Contempt can be direct or constructive. La. C.C.P. art. 221. Direct contempt is defined in La. C.C.P. art. 222 as "one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." Constructive contempt of court is defined in La. C.C.P. art. 225 as "any contempt other than a direct one." "In order to find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of the court "intentionally, knowingly and purposely, without justification." Kirby, 579 So.2d at 519.
The record is replete with examples of contemptuous behavior on the part of Mr. Horrell. The trial court cited Mr. Horrell's "failure to comply with [the court's] order to let people in to look at the furniture, the pattern and conduct of constant litigation in an attempt to avoid closing this will out and using [Mr. Horrell's] ability as an attorney and [his] creative skills to browbeat the other side." Prior to the contempt rule, there was a direct order by the trial court directing the Provisional Administratrix to inventory and appraise furniture in one of the decedent's properties. Mr. Horrell, however, remained in noncompliance with this order at the time of the hearing on the Motion for Contempt, Sanctions and Attorney's Fees.
Thus, we find no error in the trial court's finding that the dignity and authority of the court was impaired by Mr. Horrell's actions. Therefore, we do not find that the trial court erred or abused its discretion in holding Mr. Horrell in contempt of court.

ATTORNEY'S FEES
The trial court ordered that Mr. Horrell pay, as a result of his contemptuous conduct, $100,000 of approximately $190,000 in attorney's fees that the Horrells incurred, and that such payment be made from Mr. Horrell's share of the succession. Mr. Horrell alleges that the trial court erred in that the trial court does not have the authority to order payments to attorneys or litigants in lieu of a contempt fine. Mr. Horrell also asserts that the trial court erred in imposing a punishment that exceeds the statutory cap of $500.00 pursuant to La. R.S. 13:4611.
An award of attorney fees is a penalty imposed to discourage a particular activity on the part of the opposing party. Langley v. Petro Star Corp. of La., 01-0198, p. 3 (La.6/29/01), 792 So.2d 721, 723. Attorney fees are generally not awarded in Louisiana unless authorized by statute or provided for by contract. Id. "No statutory provision provides for the allowance of attorney's fees in a contempt action." Reeves v. Thompson, 95-0321 (La.App. 4 Cir. 12/11/96), 685 So.2d 575, 580.
The statutory scheme underlying the legislature's authorization of an award of attorney fees in this matter is found in La. C.C.P. art. 227, which limits the punishment for contempt to that set forth in La. R.S. 13:4611. Punishment for the constructive contempt, in the case sub judice, *366 is limited. La. R.S. 13:4611 provides, in pertinent part:
Except as otherwise provided by law:
(1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of contempt of court therein, as follows:
...
(d) For any other contempt of court, including disobeying an order for the payment of child support or alimony or an order for the right of visitation, by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both. (Emphasis added).
A fine must be made payable to the court, not a party. City of Kenner v. Jumonville, 97-125, 97-210, 97-602 (La. App. 5 Cir. 8/27/97), 701 So.2d 223, 231. Fines for contempt of court are collectable by the sheriff and payable to the court or designated officials, rather than opposing litigants. La. C.C.P. art. 330. The reasoning underlying this requirement is that contempt proceedings are "designed for vindication of the dignity of the court rather than for the benefit of a litigant." Joseph v. Entergy, 05-0263, p. 8 (La.App. 4 Cir. 8/3/05), 918 So.2d 47, 52.
The trial court stated:
And, as to the contempt for the misuse of our judicial system  And, I do believe it's misuse of our judicial system, and it's a system that I have an extraordinary amount of respect forthe damage is that the parties to this proceeding have had to incur extraordinary expenses which they would not have to normally incur.
...
And I think the only way to keep you from doing this over and over again, and the punishment for it, is to pay the damages that these people have incurred through your contempt of court, and those damages are the attorneys fees. And I am going to order that you pay a hundred thousand dollars out of your share of the succession.
Mr. Horrell's challenge of the trial court's assessment of "damages" has merit. Although Mr. Horrell's actions obstructed or interfered with the trial court's order, we cannot conclude that the statutory scheme governing contempt and sanctions authorizes the court to redress a recalcitrant party's failure to comply with the court's order by ordering the payment of the opposing party's attorney fees in the amount of $100,000 as "damages" for such behavior. We find the reasoning of the Fifth Circuit in City of Kenner, persuasive and analogous. In that matter, property owners were ordered by the city to complete renovations on their homes and were found in contempt of court for failure to comply with the order. City of Kenner, 97-125, 701 So.2d at 226-27. The contempt judgment ordered that the property owners pay $1,000.00 in "penalties" to the city. The Fifth Circuit found that it was clear that the "penalty" was a "fine" for the act of contempt and therefore amended the judgment accordingly. Id., 97-125, 701 So.2d at 231.
Likewise we find the monetary "damage" assessments to be "fines" for Mr. Horrell's act of contempt, pursuant to La. R.S. 13:4611. Further, we find that the trial court erred in making the fines payable to the Horrells' attorneys as opposed to the court. A fine payable to the Horrells or their attorneys serves to benefit them and not vindicate the court. We also find that the amount of the fine is in excess of the statutorily prescribed cap of $500.00.
For these reasons, the portion of the judgment awarding the monetary payment *367 to the Horrells' attorneys is amended to reflect that the payment is actually a fine. The fine for each of the three contempts that the trial court imputed to Mr. Horrell is reduced to $500.00 and payable to the Orleans Parish Civil District Court.

PROVISIONAL ADMINISTRATRIX FEES AND COSTS
The Provisional Administratrix filed a Motion for Interim Payment, alleging that she had not been paid for her time nor reimbursed monies she advanced on behalf of the Succession. The trial court authorized an interim payment of $147,628.82. The trial court also ordered that $81,781.44 of the Provisional Administratrix's costs and fees "shall be charged solely against Walter Horrell's share of the Succession assets and any remaining balance shall be charged equally against the shares of all the heirs of Edward A. Horrell, including Walter Horrell."
Mr. Horrell asserts that the trial court erred regarding the interim payment because it was without the authority to allocate the fees incurred by the Provisional Administratrix to him. Mr. Horrell also avers that the trial court erroneously ordered Mr. Horrell to pay the portion of the Provisional Administratrix's fees attributable to his contemptuous conduct and in awarding "damages" for contempt of court.
The Provisional Administratrix moved for sanctions on Mr. Horrell pursuant to La. C.C.P. art. 863, which provides:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may present any evidence or argument relevant to the issue of imposition of the sanction.
F. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.
*368 The trial court also granted the Provisional Administratrix compensation for her services rendered and costs advanced on behalf of the Succession under La. C.C.P. art. 3351. La. C.C.P. art. 3351 provides:
An executor shall be allowed as compensation for his services such reasonable amount as is provided in the testament in which he is appointed. An administrator for his services in administering a succession shall be allowed such reasonable amount as is provided by the agreement between the administrator and the surviving spouse, and all competent heirs or legatees of the deceased.
In the absence of a provision in the testament or an agreement between the parties, the administrator or executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession. The court may increase the compensation upon a proper showing that the usual commission is inadequate.
A provisional administrator or an administrator of a vacant succession shall be allowed fair and reasonable compensation by the court for his services.
The compensation of a succession representative shall be due upon the homologation of his final account. The court may allow an administrator or executor an advance upon his compensation at any time during the administration. (Emphasis added).
In Succession of Bell, 06-1710, p. 2 (La. App. 1 Cir. 6/8/07), 964 So.2d 1067, 1068-69, Geraldine Bell died intestate, and leaving two major children. The court reviewed a judgment, holding one of her children in contempt for violating the previous orders of the court and ordering her to pay the attorney fees and costs incurred by the administratrix. Succession of Bell, 06-1710, p. 4, 964 So.2d at 1070. The trial court also held the daughter in contempt for violating the previous orders of the court to pay the costs of retrieving the damaged car from impound storage, to provide the administratrix with a key, allowing access to the house, and to cooperate with attempts to market the house. Id., 06-1710, p. 7, 964 So.2d at 1072. The appellate court found no error or abuse of discretion in these assessments, "since they were simply reimbursements of amounts that" the daughter's "actions had cost the estate." Id. Although the trial court was within its authority to require the reimbursement of expenses incurred by the administratrix due to the daughter's actions, the trial court could not find her in contempt of court and impose penalties without setting forth the facts constituting contempt in a rule to show cause. Succession of Bell, 06-1710, p. 7, 964 So.2d at 1072-73.
Similarly, we conclude that the record and Louisiana law supports the trial court's order of reimbursements of amounts that Mr. Horrell's actions cost the estate. After a show cause hearing, the trial court found that Mr. Horrell was in contempt for failure to comply with the trial court's order to allow the Provisional Administratrix, the notary and the appraisers entry to his residence.
Mr. Horrell contends that he was defending himself from the attacks of others. However, Mr. Horrell offered no more than his own testimony for support, which the trial court did not find credible. Mr. Horrell's conduct was not an aggressive, but legitimate defense.
The trial court has considerable discretion in the imposition of sanctions, and the record demonstrates that Mr. Horrell's actions were the cause of considerable delay and expense in this litigation. Furthermore, *369 statutory authority exists for the Provisional Administratrix's request for interim payment for costs and fees. Therefore, we find no error in the trial court's authorization of an interim payment to the Provisional Administratrix and her firm for $147,628.82 and the trial court's order that $81,781.44 of the costs and fees be charged against Mr. Horrell's share of the Succession assets.

NO RIGHT OF ACTION AND PRESCRIPTION
Mr. Horrell contends that the trial court's failure to sustain his Exception of No Right of Action filed against the Horrell's Motion for Contempt, Sanctions and Attorney Fees constituted error. He also argues that actions for sanctions under La. C.C.P. art. 863 prescribed.
An action can only be brought by a person having a real and actual interest which he asserts, unless otherwise provided by law. La. C.C.P. art. 681. The objection of no right of action is used to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com'n., 94-2015, p. 4 (La.11/30/94), 646 So.2d 885, 888. "The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case is a member of the class that has a legal interest in the subject matter of the litigation." Id. The party raising a peremptory exception bears the burden of proof. Falcon v. Town of Berwick, 03-1861, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1222, 1224.
Mr. Horrell contends that only a succession representative has a right of action to assert a claim on behalf of the succession representative, the succession or the heirs during administration. Mr. Horrell relies on La. C.C.P. art. 685 and argues that as a matter of law, the right of action to sue to enforce a right of the deceased or his succession is conferred to the succession representative. La. C.C.P. art. 685 provides "the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration." (Emphasis added).
The remedy sought by the Horrells was in their own right, as heirs of the Succession, not as "a right of the deceased or of his succession." "[T]he succession representative has no power to maintain an action to enforce some rights which the Civil Code designates as being purely personal to the heirs, but he can bring other actions designated as personal to the heirs provided the institution of such action is necessary to obtain funds for the payment of debts and charges of the succession." Horrell v. Horrell, 99-1093, p. 9 (La.App. 1 Cir. 10/6/00), 808 So.2d 363, 370, quoting Ralph Slovenko, Comment, Powers of a Succession Representative in Louisiana, 27 Tul.L.Rev. 87, 106 (1952).
The Horrells, as heirs, are members of the class that have a real or actual interest in the subject matter of the litigation, such that they would have a right to bring an action to have the court determine whether the conduct of Mr. Horrell is contemptuous and sanctionable by virtue of Louisiana law. Thus, we find no error in the trial court's denial of the exception.
Mr. Horrell also avers that the actions based on La. C.C.P. art. 863 prescribe in one year. Mr. Horrell cites Keaty v. Raspanti, 00-0221 (La.App. 4 Cir.2/7/01), 781 So.2d 607, wherein, this Court determined whether a claim for sanctions was time-barred. This Court discussed La. C.C.P. *370 art. 863 sanctions as requiring a nexus between the conduct and the punishment. Keaty, 00-0221, p. 5, 781 So.2d at 610.
The record reflects that at the time of the trial court's contempt judgment, Mr. Horrell was in contempt of court for noncompliance with the trial court's order to allow the Provisional Administratrix to enter his residence to inventory and appraise property of the Succession. We find that the actions for sanctions had not prescribed, as Mr. Horrell's contemptuous behavior continued up until the point of the trial court's finding of contempt and imposition of penalties. Therefore, we find no error in the trial court's denial of Mr. Horrell's Exception of No Right of Action.

MOTION FOR PARTIAL POSSESSION
The trial court authorized a distribution in the amount of $300,000 to be paid to the Horrells in partial satisfaction of their inheritances and ordered that no payment be made to Mr. Horrell at that time. The trial judge stated:
I'm not going to give anything to Mr. Walter Horrell at this time, particularly in light of this behavior with the house that appears to me from everything to be succession property, and the fact that he has lived there for free since his father has died.
And I guess we're all going to have to shake that out in the end, how much  You know, you owe a lot of money out of your succession in interest and attorneys fees so far, so  And you may be owing more if you continue your behavior. So, I'm not giving you any money at this time.
Mr. Horrell avers that the trial court erred in "withholding a partial distribution" to him.
La. C.C.P. art. 3321 provides, in pertinent part:
When a succession is sufficiently solvent, the surviving spouse, heirs, or legatees shall be entitled to a reasonable periodic allowance in money for their maintenance during the period of administration, if the court concludes that such an allowance is necessary, provided the sums so advanced to the spouse, heirs, or legatees are within the amount eventually due them. Such payments shall be charged to the share of the person receiving them. (Emphasis added).
La. C.C.P. art. 3396.18 requires a detailed descriptive list of assets and liabilities of the estate before the succession can be closed as follows:
A. Before the succession can be closed and the independent administrator discharged, there must be filed an inventory or sworn descriptive list of assets and liabilities of the estate verified by the independent administrator.
B. A successor shall not be placed in possession of property without the filing of an inventory or sworn descriptive list of assets and liabilities and proof that the inheritance tax, if any, shown as due on the return has been paid. The successor may be placed in possession by a final or partial judgment of possession. (Emphasis added).
Louisiana Law further provides for the rendering of a judgment of possession in the following manner:
The court shall render and sign immediately a judgment of possession, if it finds from an examination of the petition for possession, and from the record of the proceeding, that the petitioners are entitled to the relief prayed for, and that all inheritance taxes due have been paid or deposited into the registry of the court, or that no such taxes are due and that an inheritance tax return, when required, with the required accompanying *371 documents, has been filed with the collector of revenue. The judgment shall recognize the petitioners as the heirs, legatees, surviving spouse in community, or usufructuary, as the case may be, of the deceased, send the heirs or legatees into possession of the property owned by the deceased at the time of his death, and recognize the surviving spouse in community as entitled to the possession of an undivided one-half of the community property, and of the other undivided one-half to the extent that he has the usufruct thereof....
The procedure required for a judgment of possession is also provided as follows:
A judgment of possession shall be rendered and signed as provided in Article 3061. The judgment shall be rendered and signed only after a hearing contradictory with the succession representative, unless he joins in the petition, in which event the judgment shall be rendered and signed immediately.
The Second Circuit found a judgment of partial possession premature, despite a delay by an independent executor in probate proceedings, before proof of accounting for federal estate tax was provided, and before a detailed descriptive list of assets and liabilities was before the court. In re Succession of Davis, 43,096, pp. 11-12 (La. App. 2 Cir. 3/19/08), 978 So.2d 606, 611-12. Such list is an accounting that was not complete before the trial court in the case sub judice. Rather, in 2002, the Provisional Administratrix was ordered to amend the detailed descriptive list of succession assets and debts, establishing the value of property belonging to the Succession, which is located at the residence of Mr. Horrell.
Thus, the trial court's issuance of the judgment placing the Horrells in partial possession was premature given that inventory and appraisal of Succession property was the very subject of the order that Mr. Horrell was found in contempt for noncompliance. Therefore, we reverse the portion of the judgment placing the Horrells in partial possession and remand the matter to the trial court for further orders on the required accountings of the Provisional Administratrix before delivery of the decedent's legacy.

AGENT FOR SERVICE OF PROCESS
Mr. Horrell avers that the trial court erred by ordering that Mr. Levenson continue to act as his agent for service of process in this matter and the order of payment for such services. The trial court found Mr. Horrell in contempt on service issues, and ordered that Mr. Levenson continue to act as Mr. Horrell's agent for service of process and that Mr. Horrell pay Mr. Levenson $1,559.34 for services rendered and expenses incurred through May 24, 2007. The trial court also ordered Mr. Horrell to pay for the services of Mr. Levenson as his agent for service of process, as the charges are submitted to and approved by the trial court.
La. C.C.P. art. 5251 provides, in pertinent part:
Except where the context clearly indicates otherwise, as used in this Code:
(1) "Absentee" means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a person who may be dead, though the fact of *372 his death is not known, and if dead his heirs are unknown. (Emphasis added).
(2) "Agent for the service of process" means the agent designated by a person or by law to receive service of process in actions and proceedings brought against him in the courts in this state.
Numerous unsuccessful attempts to serve Mr. Horrell were made through the St. Tammany Sheriff and a special process server. Thereafter, Mr. Horrell, was repeatedly absent. Mr. Levenson was appointed as a curator ad hoc to locate Mr. Horrell and accept service of process on his behalf. Mr. Horrell's claims that the St. Tammany Sheriff did not know where he lived and that the gate was not locked (which was written on the returns) are unpersuasive. We also find that a diligent effort has been made where process servers could not get onto the premises nor find Mr. Horrell for two years. The trial court concluded that Mr. Horrell had "gone out of [his] way to avoid service." We find no error in this determination, the trial court's subsequent order of payment for Mr. Levenson's reasonable fees, and continued appointment of Mr. Levenson as Mr. Horrell's agent for service of process.

DECREE
For the foregoing reasons, we affirm the contempt judgment of the trial court, the trial court's denial of Mr. Horrell's Exception of No Right of Action, and the trial court's order that Mr. Horrell pay Mr. Levenson and that he continue to act as agent for service of process for Mr. Horrell. We also affirm the trial court's order authorizing an interim payment to the Provisional Administratrix for $147,628.82 and that $81,781.44 of the Provisional Administratrix's costs and fees be charged solely against Mr. Horrell's share of the Succession assets.
In compliance with La. R.S. 13:4611, the judgment of the trial court is amended to reflect a fine of $500.00, made payable to the trial court. The partial judgment of possession is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal are assessed against appellant, Mr. Horrell.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; REMANDED.